## 52006. SCROGGINS et al. v. HARPER.

CLARK, Judge.

This case arises from the foreclosure of a junior or second loan deed. Borrowers appeal from an order in favor of the lender appellee confirming a foreclosure sale under the provisions of Code Ann. § 67-1503 et seq. The two questions presented are: (1) Did the trial judge err in failing to consider the prayer for an alleged excess between the sale price and the debt filed as a part of borrowers' answer to the petition for confirmation? (2) Was the foreclosure advertisement fatally defective in failing to state as was in fact orally announced at the sale that it was to be subject to an outstanding first loan deed?

1. The statute (Ga. L. 1935, p. 381) now contained in the Annotated Code Supplement as § 67-1503 et seq. prescribed the procedure which was to be followed as a condition precedent to the seeking of a deficiency judgment by a lender following a foreclosure sale. It is clearly stated in such confirmation proceeding that "The court shall require evidence to show the true market value of the property sold under such powers [contained in the security instrument], and shall not confirm the sale unless he is satisfied the property so sold brought its true market value on such foreclosure sale." Code Ann. § 67-1504. Accordingly, the sole issue is the valuation of the real estate as of the date of the sale. See *Aaron v. Life Ins. Co.*, 138 Ga. App. 286, and *Thompson v. Maslia*, 127 Ga. App. 758 (195 SE2d 238). Therefore, the trial court correctly made no decision on the claim by borrowers that if the sale was confirmed they were entitled to a judgment for a sum claimed to be an excess over their debt. Monetary claims between the parties having no relation to the "true market value" are matters for determination in other lawsuits.

2. The facts and the law relevant to the manner in which this sale was conducted including the omission in the advertisement of the existence of the first loan deed have been handled so well by the trial judge that we adopt it verbatim. Without quotation marks it reads as follows:

Harper [lender] seeks confirmation pursuant to Code § 67-1503 et seq. of the Code of Georgia of a sale under the

power of a tract of 16.188 acres of land. Confirmation is opposed by the Scroggins [borrowers].

The land in question was purchased in 1971 by Harper for $6,500. He improved it by construction of a pond, barn and home. The materials for the home cost about $40,000 and Harper invested a considerable amount of his own work in the construction of the house. Harper financed construction through a construction loan to the Mount Vernon Bank, giving it a first priority security deed on the whole property. Construction was completed and the home occupied by Harper in August, 1972.

In July, 1974, Harper sold the property to the Scroggins for a cash consideration of $10,000, a deferred balance of $21,600 represented by a note and second priority deed on the property and assumption by the Scroggins of the secured indebtedness to the Mount Vernon Bank.

The Scroggins defaulted in payment of the note secured by the second priority security deed back to Harper to secure the balance of the purchase price. It is this sale of the property under the second priority deed Harper seeks to confirm.

The advertisement and sale were regular and proper in all respects except that the existence of and facts concerning the first lien to the Mount Vernon Bank were not set out in the advertisement of the sale. However, it is uncontradicted that when the sale was held it was orally announced at least three times that there was a first lien to the Mount Vernon Bank to which the sale would be subject and the balance due on the note to the bank was accurately stated at $32,000. There were a number of people at the sale and at least 3 active bidders. Bidding started at $32,000 and closed out at $38,000 with Roger DeLoach being highest bidder. DeLoach has paid the difference between his bid and the balance on the note to the Mount Vernon Bank into an escrow account pending this proceeding. It was understood by all present at the sale that the amount of the bid was inclusive of the priority indebtedness of the bank.

The Scroggins did not attend the sale; however, Mr. Scroggins was sitting in a car in the vicinity of the sale,

knew when it was being conducted and could have attended had he desired to do so. The sale occurred on October 7, 1975.

The Scroggins filed detailed responsive pleadings to the application claiming that only the whole interest and not merely the Scroggins' equitable interest could be sold under the power in question, that the advertisement of the sale did not mention the superior lien to the Mount Vernon Bank so that prospective bidders were misled causing the sale to be unfairly exercised and the sale chilled, that a fair price was not brought for the property at the sale, and that Harper had transferred his interest in the junior security deed to a Valdosta Bank and had no right to foreclose it. They prayed that the foreclosure be declared null and void, that the application be denied, and for other relief.

Much evidence was offered at the confirmation hearing on the matter of value. There was evidence that the house needed repairs and repainting and that the grounds were depleted. Also, there was evidence of a severely depressed real estate market at this time, particularly for the type property in question. Evidence of market value of the property presented by Harper was in the range of $35,000 to $40,000. One witness for the Scroggins, Tom Waldon, who is chief appraiser for the Board of Assessors for Montgomery County placed the value of the property at about $50,000.

In order for this court to confirm the sale in question the court must find that the power was fairly exercised, that the sale was regularly held, and that the property brought its true market value at the sale. After a careful review of all evidence, this court has concluded that the lawful requirements for confirmation have been met by Harper's proof and that the sale ought to be confirmed.

While it would have been the better practice for the facts concerning the bank's priority lien to have been shown in the advertisement, there is no legal requirement that this be done and when it is not done, it becomes a question of fact whether it affected a fair exercise of the power and caused chilling of the sales price. *Massey v. Nat. Homeowners Sales &c. Corp.*, 225 Ga. 93 (165 SE2d 854). The existence of the prior secured indebtedness was made

known to and was understood by all prospective bidders and did not in fact chill the bidding or constitute an unfair exercise of the power of sale. There is no showing at all that the sale was depressed for this reason or that a resale would result in a higher bid. *Sims v. Etheridge,* 169 Ga. 400 (150 SE 647), relied upon by the Scroggins, must yield to *Massey,* supra.

Further, this court finds that the bid of DeLoach is well within the range of the market value of the property and in fact constituted the true market value of the property at the time of sale. The value of the property is indeed depressed by general economic factors now being experienced in the real estate market and the particular property is depressed in value by its present condition shown by the evidence. It would appear that the Scroggins probably paid an inflated price when they bought the property, but this is a problem with which this court is not concerned in this proceeding.

The evidence shows without contradiction that the transfer of the debt and security deed in question to the Valdosta bank was for the purpose of securing an indebtedness of Harper, that such documents were duly reassigned by that bank to Harper prior to the sale and that such assignment and reassignment in no manner affected the sale or the bid price in any manner. Thus, no basis for relief to the Scroggins is shown in this respect.

This court finds that the advertisement and sale were regularly conducted as required by law, that the power was fairly exercised, and that the property brought its true market value.

The sale is confirmed.

*Judgment affirmed. Bell, C. J., and Stolz, J., concur.*

ARGUED APRIL 5, 1976 — DECIDED MAY 26, 1976.

*Scott Walters, Jr., J. Clayton Burke, Jr.,* for appellants.

*Young, Young & Ellerbee, Robert M. Clyatt,* for appellee.