72982. SHINGLER et al. v. COASTAL PLAIN PRODUCTION CREDIT ASSOCIATION.
72983. SHINGLER et al. v. FEDERAL LAND BANK OF COLUMBIA.
(349 SE2d 785)

BIRDSONG, Presiding Judge.

This is an appeal by the debtors of the confirmation of a sale under a power contained in a deed to secure debt. In January 1982, Martha G. Shingler and Ruth Gorday executed and delivered a promissory note to the Federal Land Bank of Columbia in the amount of $2,000,000. In February 1982, Ms. Shingler and Ms. Gorday executed and delivered a promissory note to Coastal Plain Production Credit Association for $290,000. Both notes were secured by deeds to secure debt, which included a power of sale, on designated realty, signed by Martha G. and Martha L. Shingler. The debtors failed to make timely payments and defaulted on both notes.

Martha G. Shingler filed a petition in bankruptcy which was dismissed in July 1985. Immediately thereafter, Ms. Shingler applied for protection under another Chapter of the Bankruptcy Act. Under 11 USC § 362 (a), Ms. Shingler was entitled to an automatic stay to the commencement or continuation of judicial process, or other action to recover a claim against her. Both appellees petitioned the bankruptcy court to "be relieved from the stay and allowed to reclaim the property as provided by law." The bankruptcy court approved their applications and authorized appellees to take action "to the full extent of its prayers. . . ." The properties covered by the deeds to secure debt were advertised and sold to the highest bidder, the only bidder being the appellees. Appellees then sought confirmation of the sales in these actions. The trial court confirmed the sale and appellants have brought these appeals. *Held*:

1. Appellants contend the trial court "did not have jurisdiction to hear the case." "[I]t is well-settled that the automatic stay of [11 USC] section 362 acts as a stay of court proceedings but does not deprive the state court of jurisdiction over the matter. *Securities & Exchange Comm. v. Wencke*, 622 F2d 1363, 1372 (9th Cir. 1980); *David v. Hooker, Ltd.*, 560 F2d 412, 418 (9th Cir. 1977)." *In re Clowser*, 39 B.R. 883, 884 (Bkrtcy. 1984). Thus, jurisdiction was proper in the trial court.

2. It is contended that the trial court erred in confirming the sales because they were "chilled." Appellants claim as a basis for this

conclusion that there was (a) "improper advertisement," (b) a "novated contract," (c) "great civil unrest" at the time of the sales, (d) "the trustee in bankruptcy was given no notice," and (e) the "lendors [sic] did not obtain bona fide appraisals to establish market value. . . ."

As authority, appellants cite *Plainville Brick Co. v. Williams*, 170 Ga. 75 (152 SE 85), which held that the holder of the power of sale in a security deed is bound to exercise the power fairly, and the property should not be brought to sale under such circumstances which would tend to prevent the property from bringing its fair market value. In *Plainville* an action for an injunction was filed against the seller which had not been ruled on at the time of the sale. The court noted that the seller and the potential bidders at the sale were subject to the doctrine of lis pendens, and that the bidders "probably would not want to 'buy a lawsuit.' " Id. at 85. The court found the seller "exercised the power of sale at his own risk under circumstances which tended to chill the bidding and prevent the property from bringing its fair market value." Id. Hn. 2.

(a) *Improper advertisement.* Appellants argue that the pending bankruptcy of Ms. Shingler was a publicly known fact, and that she had consented to an order of the bankruptcy court to have the automatic stay provisions of the bankruptcy code lifted to permit the sale of the property securing the note, and the "Consent Orders allowing said sales should have properly been included in the newspaper advertisement giving notice of the sales."

Our Code, OCGA § 44-14-162, provides for advertisement of sales under power contained in mortgages, deeds, or other lien contracts, and requires they "shall be advertised and conducted at the time and place and in the usual manner of the sheriff's sales in the county in which such real estate . . . is located. . . ." OCGA § 9-13-140 (a), which governs sheriff's sales, requires only that in "the advertisement he shall give a full and complete description of the property to be sold, making known the names of the plaintiff, the defendant, and any person who may be in the possession of the property." This court has faced this issue before and held that while it may have been the better practice to include such information in the advertisement, "there is no legal requirement that this be done and when it is not done, it becomes a question of fact whether it affected a fair exercise of the power [of sale] and caused chilling of the sales price." *Scroggins v. Harper*, 138 Ga. App. 783, 785 (227 SE2d 513). In the instant case, the trial court found the sale was advertised in accordance with the code and that there were no circumstances which "chilled the sale."

(b) *Novated contract.* The Federal Land Bank, on June 1, 1984, sent a letter to Martha G. and Martha L. Shingler, noting their offer

to sell the timber on their land and agreed to its condition that "all proceeds of said sale not less than $650,000 except 5% sales commission by Eley Frazer" would be paid to the Federal Land Bank and applied to Martha G. Shingler's debt. The highest offer received was for $627,000 and the bank declined to accept that offer. Ms. Shingler filed for bankruptcy on the same day. Thereafter, Ms. Shingler consented to the order of the bankruptcy court lifting the stay and permitting the bank to "immediately commence proceeding to exercise the power of sale contained in its security agreement and deed to secure debt." Appellants argue that the exchange of letters between the Shinglers and the bank amounted to a "novation" and "chilled" the sale of the land.

Appellants misperceive the purpose of a confirmation proceeding. "The primary issue at a hearing for confirmation of a foreclosure sale under power, which is a condition precedent to an action for deficiency judgment, is a judicial ascertainment that the property brought at least its true market value on the foreclosure sale. [Cit.] The court must also pass on 'the legality of the notice, advertisement and regularity of the sale.' " *Shantha v. West Ga. Nat. Bank,* 145 Ga. App. 712 (244 SE2d 643). "[T]he court's inquiry should go only to the value of the real estate on the date of sale, in the course of the examination to determine which the fairness of the technical procedures used may be examined, but only for the purpose of making sure that the sale was not chilled and the price bid was in fact market value." *Walker v. Northeast Production Credit Assn.,* 148 Ga. App. 121, 122 (251 SE2d 92).

Alleged defenses to the original debt such as the "novation" asserted here "are not relevant to the confirmation proceeding, even assuming any of the appellants had a meritorious defense to the prosecution of a deficiency judgment against them. . . . [T]he [confirmation] statute does not undertake to decide controversies between parties as to the amount of the debt, side agreements, or matters in defense of default or in denial of indebtedness, or which might have been the basis of an injunction preventing the foreclosure sale." *Harris & Tilley, Inc. v. First Nat. Bank,* 157 Ga. App. 88, 91 (276 SE2d 137); accord *Jones v. Hamilton Mtg. Corp.,* 140 Ga. App. 490, 491 (231 SE2d 491); *Scroggins v. Harper,* supra.

Appellants initiated the so-called novation and after its demise consented to the sale of the properties involved. The purpose of the confirmation hearing for the sale they consented to, is to insure that the correct procedure was followed, the sale was not chilled, and the property brought its fair market value. The record is devoid of any evidence that the alleged novation chilled the sale, and in any event it was not a proper issue for a confirmation hearing unless it chilled the sale. This portion of this enumeration is without merit.

(c) *"Great civil unrest."* Appellants introduced evidence that a black criminal defendant ran from a hearing, was shot and killed, on the day prior to the sale, in Ashburn, Georgia, the site of the sale of this property. The shooting incident occurred on September 30, 1985. On that night there was a demonstration by blacks in Ashburn. The State Patrol sent in a number of troopers to assist the local police officers. The GBI sent in a group of their agents. The Chief of Police estimated that there were 100 officers on duty in Ashburn for a few days. The Sheriff said that the day of the sale was "calm" but "tense." There were no demonstrations on the day of the sale, the courthouse was open, but some businesses were closed. The only things visible were "police and police and police." The trial court found "no circumstances existing on the date of the sale which chilled the sale." Those findings are not clearly erroneous and are supported by the evidence of record.

(d) *Trustee in bankruptcy was given no notice.* This issue was not litigated during the trial. The trustee in bankruptcy had lifted the stay as to the sale of this property. We find no evidence that any alleged failure to notify the trustee in bankruptcy of this hearing "chilled" the sale.

(e) *Lenders did not obtain a bona fide appraisal of the property.* Appellants have failed to cite us to any portion of the record where this issue was raised at trial. Appellees did offer in evidence the testimony of an expert appraiser who stated that "[t]he last appraisal" of this property was December 18, 1985, and Mr. Barnes of his office and he had visited the various properties and valued them as of the date of the sale. There were four tracts involved, and the bank's experts concluded that the total value of the four tracts was $1,931,000 and that is the bid the bank submitted at the public sale and the price at which the land was sold. Since the bank has acquired the four tracts, no bids have been received on one of the tracts, several bids have been received on two tracts — all substantially lower than what the bank paid — and one bid has been received on the fourth tract which is slightly higher than the bank valued the land. We also find, as with the other allegations made by appellants, that there is no evidence in the record that this alleged failure of the bank to obtain an appraisal tended to "chill" the sale of the land. This enumeration is without merit.

3. The third enumeration avers "proper notice of the sale was not given." This enumeration is not argued in the brief and is considered abandoned.

4. It is contended that the "sale price was grossly disproportionate to [the] appraised price. . . ." Appellant's expert appraiser was of the opinion that the four tracts of land were worth $2,156,352. Also, there was evidence that the Federal Land Bank had offered the four

tracts for sale at $2,143,600. The bank bid in the properties at $1,931,000 and has been unable to sell the land at a price which would reimburse them for that amount.

The foreclosing party is not a guarantor or insurer of satisfactory results for a defaulting debtor as to market price. *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 331 (270 SE2d 867). Its obligation is to sell according to the terms of the security instrument, in good faith, in compliance with the statutory requirements, and to obtain the highest amount possible by such a sale. Id. If the manner in which the sale was conducted is legal, the fact that in the debtor's opinion it brought an inadequate price does not by itself demonstrate the power of sale was exercised in a manner other than in good faith. The question of value is one for the trier of fact, the trial judge in this instance, and his determination will not be disturbed by a reviewing court if there is any evidence to support it. *Plainville*, supra at 121. Although the evidence was in conflict as to the market value of the four tracts, the findings of the trial court are supported by the evidence and are not clearly erroneous. *Oates v. Sea Island Bank*, 172 Ga. App. 178 (2) (a) (322 SE2d 291).

*Judgments affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED OCTOBER 14, 1986.

*Ralph M. Walke*, for appellants.
*Alan H. Swan*, for appellees.