## A94A1679. WILLIAMS v. SOUTH CENTRAL FARM CREDIT, ACA et al.

(452 SE2d 148)

SMITH, Judge.

This litigation arose from loans and corresponding deeds to secure debt executed by Loron E. Williams, Jr., in favor of the predecessors in interest of South Central Farm Credit, ACA ("Farm Credit"). Williams began purchasing land in 1946, financing his purchases with mortgages and security deeds to individuals, banks and other entities. In 1987 he filed for relief under Chapter 11 of the United States Bankruptcy Code. A reorganization plan was provisionally confirmed in 1988, discharging approximately half of Farm Credit's claim and providing for periodic payments to retire the remainder of Farm Credit's claim. When Williams failed to make those payments, Farm Credit and Williams renegotiated the plan, and the resulting settlement agreement was approved by the bankruptcy court. However, Williams also failed to make the payments provided under the settlement agreement. Farm Credit notified Williams of the acceleration of his indebtedness and gave notice of foreclosure and sale to take place on April 7, 1992.

On April 3, 1992, Williams filed a second bankruptcy proceeding, which he testified was for the purpose of stopping the foreclosure. After an emergency hearing held on April 6, 1992, the bankruptcy court determined Williams had failed to abide by the terms of the settlement agreement, terminated the automatic stay of bankruptcy with respect to Farm Credit, and authorized Farm Credit to proceed with the foreclosure. On the morning of the foreclosure sale, Williams filed a petition to enjoin the sale in Crisp County Superior Court. The petition was denied, and the property was sold to Brooks County Land Partnership.

Williams then filed this action in Crisp County Superior Court seeking injunctive relief and damages against Farm Credit, the partners of Brooks County Land Partnership, Farmers & Merchants Bank, The Citizens Bank, Del-Cook Lumber Company, and The Commercial Bank of Thomasville. After his prayer for an interlocutory injunction was denied, Williams dismissed all defendants except Farm Credit and filed a second amended complaint naming Farm Credit and one of its officers as defendants.[1] The amended complaint alleged wrongful foreclosure on his property and sought compensatory damages for loss of equity in the property, punitive damages and attorney fees. After extensive discovery, the trial court denied Wil-

---

[1] Because of our disposition of this appeal, we need not consider whether Farm Credit's officer properly was added as a party in the amended complaint. See OCGA §§ 9-11-15 (a); 9-11-21.

liams's motion for summary judgment and granted defendants' motion for summary judgment. Williams appeals.

1. In his first enumeration of error, Williams contends the realty should not have been advertised and sold as a single unit. Citing decisions from other jurisdictions, Williams urges the adoption of a rule that distinct parcels of land secured by separate deeds to secure debt should be advertised and sold separately. However, we need not address that question on the facts presented here. The four deeds to secure debt at issue do not each refer to a distinct and separate tract of realty. The same tracts of land are described in more than one deed. Moreover, the deeds were successive deeds executed in favor of Farm Credit's predecessors in interest over a period of eleven years; two deeds expressly refer to priorities established on the same tracts of property by earlier deeds.[2] This enumeration is without merit.

2. Williams next contends the trial court should not have granted summary judgment to defendants because there was evidence their pre-foreclosure conduct "chilled" the sale, causing the realty to be sold at a grossly inadequate price. He first contends Farm Credit and its officer chilled the sale by fraudulently leading him to believe it would accept delinquent payments or a deed in lieu of foreclosure. However, these contentions were fully addressed in the April 6, 1992 emergency hearing before the bankruptcy court. At the hearing, Williams testified at length to the alleged negotiations regarding the payment of the delinquent installments as well as the alleged agreement to accept a deed in lieu of foreclosure. The bankruptcy court concluded Williams had failed to abide by the terms of its final order incorporating the parties' settlement agreement and allowed the foreclosure sale to proceed. These issues were litigated and necessarily decided by the bankruptcy court, and Williams is barred by the doctrine of collateral estoppel from reasserting them here. *Sorrells Constr. Co. v. Chandler Armentrout & Roebuck, P.C.*, 214 Ga. App. 193, 194 (447 SE2d 101) (1994). Because the bankruptcy court ruled that Farm Credit had a right under the terms of the court-approved settlement agreement to require timely payments and to proceed to foreclosure, Williams cannot now complain that this conduct chilled the sale. There can be no liability for the exercise of an absolute right. See generally *Automatic Sprinkler Corp. v. Anderson, Inc.*, 243 Ga. 867 (257 SE2d 283) (1979) (no breach of implied covenant of good faith); *Systems Engineering Assoc. v. Peachtree Corners, Inc.*, 179 Ga. App. 48 (345 SE2d 136) (1986) (no liability based on fraud); *J. C. Penney Co. v. Davis & Davis, Inc.*, 158 Ga. App. 169, 170-171 (1) (279

---

[2] There were also questions raised as to whether local tax liens and other encumbrances placed on the property as a whole could be apportioned among smaller parcels.

SE2d 461) (1981) (no tortious interference with contract). Even were this not the case, Williams has not shown, as he must, a causal connection between this conduct and any chilling of the sale. *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 329-331 (1) (270 SE2d 867) (1980).

Williams next contends Farm Credit represented to a prospective purchaser that the property would be sold for ten percent down, with the balance due in thirty days. He alleges Farm Credit's later withdrawal of this representation chilled the sale. However, assuming without deciding such a representation was indeed made and relied upon by the prospective purchaser, this does not establish that the sale was chilled. Williams must also establish that the particular conduct complained of caused the property to be sold for a grossly inadequate price. *Kennedy*, supra. Here, though, the prospective purchaser testified the property ultimately sold for more than he was prepared to pay for it. It is apparent, therefore, that any belief or conduct on the part of this witness did not cause the property to be sold for a grossly inadequate price.

Williams also contends three errors in the advertisement for the sale had a chilling effect. The advertisement consisted of ten closely printed columns published in the Cordele Dispatch on four successive occasions. The three errors were two substitutions of "southeast" for "southwest" in describing an outparcel, and the omission of one line of text referring to a land lot identified immediately below. The errors appeared in the first two publications of the advertisement but were corrected in the third and fourth publications. Each advertisement referenced the deeds to secure debt, giving the book and page number in the records of Crisp County.

If a notice or advertisement of a foreclosure sale under power does not substantially meet the legal requirements, the sale should be set aside. However, in order to void the sale, the irregularity or deficiency in the advertisement must contribute to chilling the price on the sale of the property. *Walker v. Northeast Production Credit Assn.*, 148 Ga. App. 121, 122 (2) (251 SE2d 92) (1978). Errors that would not confuse the bidding intentions of any potential bidder of sufficient mental capacity to enter a binding contract for the sale of the real property do not show a chilling of the sale so that a fair market value bid was not obtained. *Tarleton v. Griffin Fed. Savings Bank*, 202 Ga. App. 454, 455 (2) (b) (415 SE2d 4) (1992). Moreover, reference in a foreclosure advertisement to extrinsic evidence such as official records constitutes "a sufficient key" to correct a typographical error and show the precise location of the property. *Penn Mut. Life Ins. Co. v. Donalson*, 177 Ga. 84, 85, hn. 4 (169 SE 337) (1933) (reference to recorded security deed). See also *Shantha v. West Ga. Nat. Bank*, 145 Ga. App. 712, 713 (244 SE2d 643) (1978) (reference to

unrecorded plat).

Williams's witness acknowledged the reference in the advertisements to the deeds to secure debt. Also, he did not examine those deeds or any other extrinsic evidence to determine whether the errors were cured. There was no evidence that any prospective purchaser was confused by three errors in two out of four publications of the advertisement. Williams stated in an interrogatory response that he knew of no prospective purchasers who were confused by the advertisement. The only testimony presented was that the prospective purchasers had no problem determining the property offered for sale through the use of official records such as tax plats and maps. Again, Williams has failed to show a causal connection between the alleged wrongdoing and any chilling of the sale. As the trial court observed, the only evidence of any chilling of the sale appeared to be Williams's own conduct in filing petitions in the bankruptcy court and the superior court immediately before the sale, leading prospective purchasers to believe the sale might not take place. This enumeration of error has no merit.

3. In his remaining enumerations of error, Williams contends Farm Credit's assignment as collateral of two of the four deeds to secure debt rendered the advertisement and sale null and void and destroyed Farm Credit's right to attorney fees. These contentions have no merit. Williams acknowledges that the deeds to secure debt had been reassigned to Farm Credit at the time of the sale. Williams contends, however, that the deeds should have been reassigned to Farm Credit before advertisement of the sale. A similar contention was raised in *Scroggins v. Harper*, 138 Ga. App. 783 (2) (227 SE2d 513) (1976). Scroggins, the debtor, contended that Harper, the lender, had assigned his security interest as collateral to a bank and thus had no right to foreclose it. Id. at 785. This court disagreed, noting the assignment was for the purpose of collateral and that the security deed was reassigned to the lender "prior to the sale." Id. at 786. Furthermore, Farm Credit's assignment expressly incorporated by reference a reservation of the right to exercise the power of sale. These enumerations of error have no merit.

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Beasley, P. J., Andrews, Johnson, Blackburn and Ruffin, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

"The foreclosing party is not a guarantor or insurer of satisfactory results for a defaulting debtor as to market price. *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 331 (270 SE2d 867). Its obligation is to sell according to the terms of the security instrument, in good faith, in compliance with the statutory requirements,

and to obtain the highest amount possible by such a sale. Id." *Shingler v. Coastal Plain Prod. Credit Assn.*, 180 Ga. App. 539, 543 (4) (349 SE2d 785). Breach of this duty is a tort compensable at law. *Clark v. West*, 196 Ga. App. 456, 457 (395 SE2d 884).

In the case sub judice, plaintiff has presented evidence that the price realized on the foreclosure was grossly inadequate, amounting to approximately one-half the true market value of the property and a shortfall of perhaps $5,000,000. However, as this is a wrongful foreclosure claim, plaintiff's burden extends beyond a showing of inadequate price as he must also demonstrate that the power of sale was exercised other than in good faith. *Threadmill, Ltd. v. First Union Nat. Bank of Ga.*, 207 Ga. App. 688, 689 (1) (428 SE2d 685); *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 331 (1) (270 SE2d 867).

One of the circumstances of the sale which plaintiff maintains was improper is the sale of many non-contiguous parcels of land, totaling several thousands of acres, as one unit. Recognizing an absence of direct Georgia authority, plaintiff has cited the cases of several other jurisdictions for the proposition that such an en masse sale of property is inconsistent with the foreclosing party's duty to adopt a procedure intended to obtain the highest amount possible by such sales. See for example *Garris v. Fed. Land Bank of Jackson*, 584 S2d 791, 793-794. If we may not take notice of such as a general rule of economics, there is ample evidence that the offering of the many non-contiguous parcels in this case separately or in smaller lots would have opened the field to a greater number of bidders who would have offered higher prices.

Defendants have responded by relying upon the contractual language of the deeds to secure debt which authorize defendant Farm Credit to sell "all or any part of said land." Such language has been construed to permit the secured party to sell the pledged property, in its sole discretion, either in parcels or en masse. *Wardlaw v. Woodruff*, 175 Ga. 515, 516 (7) (165 SE 557); *Doyle v. Moultrie Banking Co.*, 163 Ga. 140, 142 (135 SE 501); *Dutton v. Faulk*, 159 Ga. 736 (1) (126 SE 718). Each of these cases involves a single security deed.

There are also cases holding that where property is sold under authority of a single security deed, it need not be sold in parcels absent a provision in the deed requiring such a sale. See *Harwell v. First Fed. Savings &c. of Winder*, 245 Ga. 757 (2) (267 SE2d 229); *Marett Properties, L.P. v. Centerbank Mtg. Co.*, 204 Ga. App. 265 (419 SE2d 113); *Marion G. Davis, Inc. v. Cameron-Brown Co.*, 177 Ga. App. 646 (340 SE2d 216); *Classic Enterprises v. Continental Mtg. Investors*, 135 Ga. App. 105 (1) (217 SE2d 411).

In the present case there are four security deeds. As noted by the majority, some tracts of land are described in more than one deed.

However, none of the security deeds refers to all of the parcels. The simultaneous foreclosure of multiple security deeds upon the *same* property is permitted, *Williams v. Joel*, 89 Ga. App. 329 (3) (79 SE2d 401), and of course, several properties may be referenced by a single security deed. However, I find no authority for the procedure used by defendants of aggregating for sale different properties which are to be sold under the authority of multiple security deeds. To permit such a procedure is to make a mockery of the foreclosing party's obligation to conduct the sale in a manner intended to bring the highest price. Recognizing that our case law is clear that in some respects Georgia does not aggressively demand procedures which attempt to maximize the proceeds from foreclosure sales, there still must be limits set in regard to the extent which foreclosing parties may depress prices by aggregating properties for sale.

In my view, the combined sale of all of the properties referenced in these four deeds as one unit was improper and when considered in conjunction with the inadequate price realized on the sale constitutes a just basis for an award of damages on plaintiff's wrongful foreclosure claim. Therefore, I cannot agree with Division 1 of the majority opinion and must respectfully dissent. I would hold that, where multiple security deeds are involved, the foreclosing party's duty to maximize the proceeds of the sale requires that the property be offered in parcels which maximize the proceeds of the sale, although the parameters of this rule must be limited by the foreclosing party's rights to offer en masse the property referenced in a single security deed. This supposition has been seen in the confirmation case of *First Nat. Bank of Louisville, Kentucky v. Childress-Ross Properties*, 189 Ga. App. 765 (377 SE2d 533), and while the issues in the case sub judice are somewhat different, this earlier case is at least consistent with the rule I propose.

DECIDED NOVEMBER 29, 1994 —
RECONSIDERATION DENIED DECEMBER 19, 1994 —

*Warren S. Shulman, Bemon G. McBride III*, for appellant.
*Martin, Snow, Grant & Napier, John T. McGoldrick, Jr., Kirbo & Kendrick, Bruce W. Kirbo, Sr.*, for appellees.