**In re Terry Leon COOPER, Lisa Ann Cooper, Debtors.**

**No. 03–17546.**

United States Bankruptcy Court, E.D. Tennessee, Southern Division.

Nov. 16, 2004.

Sandra Benton, Hixson, Tennessee, for Debtors.

Thomas Knight, Grisham, Knight & Hooper, Chattanooga, Tennessee, for Centex Home Equity Company, LLC.

## MEMORANDUM

R. THOMAS STINNETT, Bankruptcy Judge.

The court must decide whether a secured creditor validly foreclosed on property owned by the chapter 13 debtors before they filed their chapter 13 case. The chapter 13 debtors, Mr. and Mrs. Cooper, owned a home in Catoosa County, Georgia. The home secured the Coopers' debt to Centex Home Equity. Prior to the pending chapter 13 case, the Coopers filed a chapter 7 bankruptcy case and received a discharge of their debts in September 2003. The discharge relieved the Coopers from their personal liability to Centex for the secured debt, but Centex's lien on the property continued. 11 U.S.C. § 524(a)(2); *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

In the chapter 7 case the court granted Centex relief from the automatic stay so that it could foreclose on the Coopers' home. 11 U.S.C. § 362(a), (d). The foreclosure sale was scheduled for November 4, 2003 and was held on that day. Apparently Centex bought the property at the foreclosure sale, or it has a duty to the purchaser to attempt to enforce the foreclosure against the Coopers. In any event, the Coopers have not contested Centex's standing.

The Coopers filed this chapter 13 case at 4:15 p.m. on the day of the foreclosure sale. The law required Centex to hold the foreclosure sale no later than 4 p.m. Ga. Code Ann. § 44–14–162 & § 9–13–161(a). The debtors have not contended that the sale occurred later. Thus, the Coopers

filed this chapter 13 case shortly after the foreclosure sale.

The Coopers' proposed chapter 13 plan provided for them to keep the home by paying any arrearage to Centex and continuing the regular monthly payments as if the foreclosure had not occurred. 11 U.S.C. § 1322(b)(2), (b)(5). Centex filed a motion to validate the foreclosure sale and lift the automatic stay so that it could take possession of the house. 11 U.S.C. § 362(a), (d). The motion asserts that the Coopers can not keep the house as proposed in the chapter 13 plan because the foreclosure sale was valid and complete before the Coopers filed this chapter 13 case. 11 U.S.C. § 1322(b)(2), (c)(1).

The court confirmed the plan, but the court and the parties understood that if the court granted Centex's motion, which was filed before confirmation, then Centex would be entitled to the house, and the plan provisions as to Centex would not be carried out. The Coopers and Centex have continued to litigate Centex's motion, and the chapter 13 trustee is holding the plan payments to Centex.

■ The Coopers challenged the foreclosure sale on the ground that Centex did not carry it out as required by Georgia law. The Coopers eventually filed a counter motion asking for, among other things, dismissal of Centex's motion. The validity of a pre-bankruptcy foreclosure under state law is a question that can regularly come up in chapter 13 cases in light of § 1322(b)(5) and § 1322(c)(1). Section 1322(b)(5) allows a chapter 13 plan to provide for curing defaults, including defaults on a home mortgage. 11 U.S.C. § 1322(b)(5); 1 Keith M. Lundin, *Chapter 13 Bankruptcy* § 46.2 at 46–16—46–18.

Section 1322(c)(1) cuts off the right to cure when "such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1). If the foreclosure sale is not valid against the debtor under applicable nonbankruptcy law, then the foreclosure did not cut off the right to cure. The Coopers have not challenged the foreclosure under any federal nonbankruptcy law, and apparently there is no such law that is relevant. Thus, Georgia law controls, and this court has jurisdiction to decide whether the foreclosure sale is valid under Georgia law. *York v. Bank of America (In re York)*, 291 B.R. 806 (Bankr.E.D.Tenn.2003); *Farinash v. First Union National Bank (In re Blackmon)*, 283 B.R. 910 (Bankr.E.D.Tenn.2002).[1]

■ The Coopers contend the foreclosure sale was not advertised as required by Georgia law. Georgia law provides that a foreclosure sale under a power of sale granted by contract must be advertised and conducted at the time and place and in the usual manner of a sheriff's sale in the county in which the property is located. Ga.Code Ann. § 44–14–162.· The statute also provides that if the advertisement includes the street address, city and ZIP code, they must be clearly set out in bold type.

The statute on sheriffs' sales provides:

The sheriff ... shall publish weekly for four weeks in the legal organ for the county, or if there is no newspaper designated as such, then in the nearest newspaper having the largest general circulation in such county, notice of all sales of land .... In the advertisement the officer shall give a full and complete

---

1. Venue of the Coopers' chapter 13 case is not an issue since no interested party filed a timely objection. 28 U.S.C. §§ 1408 & 1409(a); Fed. R. Bankr.P. 1014(a)(2); *York v. Bank of America (In re York)*, 291 B.R. 806 (Bankr. E.D.Tenn.2003); *Farinash v. First Union National Bank (In re Blackmon)*, 283 B.R. 910 (Bankr.E.D.Tenn.2002).

description of the property to be sold, making known the names of the plaintiff, the defendant, and any person who may be in possession of the property. In the case of real property, such advertisement shall include the legal description of such real property and may include the street address ... if available, but provided that no foreclosure shall be invalidated by the failure to include a street address or by insertion of an erroneous street address.

Ga.Code Ann. § 9–13–140(a).

Centex offered proof that it advertised the foreclosure sale in the *Catoosa County News* each week for the four weeks before the sale. The Coopers alleged that some of the four advertisements contained the wrong legal description of the property. Centex filed a copy of the publisher's affidavit, and it included a copy of one of the foreclosure sale advertisements. The copied advertisement contained the correct legal description of the property. According to the publisher's affidavit, this advertisement was published on October 8, 15, 22, and 29, 2003. Based on the publisher's affidavit, Centex contended the Coopers' argument was wrong on the facts.

At the hearing on the motions, the Coopers put into evidence copies of the advertisements as actually published in the newspaper. The copies revealed that the first three advertisements used the wrong legal description of the property. Only the fourth advertisement contained the correct legal description. It was published the week before the foreclosure sale.

Centex did not challenge the Coopers' evidence that the legal description was wrong in the first three advertisements. Thus, the evidence proves that the publisher's affidavit was untrue. It included a copy of the fourth advertisement as the advertisement that ran all four weeks, but in truth, the advertisement that ran the first three weeks contained a different and wrong property description.

The wrong legal description identifies the property as being in original land lot 211 in the 3rd section of the 27th district of Catoosa County. The calls begin at the southwest corner of lot 211 and proceed north on the western line of the lot to an unidentified county road.

The correct legal description identifies the property as part of original land lot 69 in the 3rd section of the 28th district of Catoosa County. The calls begin in the western line of Meredith Foster Road. As printed in the newspaper, the correct legal description is more than twice as long as the wrong legal description.

All four advertisements correctly identified the parties and the security deed as follows:

... a Security Deed executed by Terry Cooper and Lisa Ann Cooper to Centex Home Equity Corporation dated the 25th day of May 2001, and recorded in Deed Book 809, Page 229 CATOOSA County, Georgia records ....

All four advertisements also gave the correct street address of the property as 250 Foster Road, Ringgold, Georgia.

The basic statutory requirements for advertising a foreclosure sale are set out in the statute that deals with advertising a sheriff's sale. Ga.Code Ann. § 9–13–140(a). The advertisement—

(1) must be published once per week in the four weeks before the week of the sale;

(2) must be published in the "legal organ" of the county or another newspaper that meets the alternate requirements of the statute;

(3) must include a full and complete description of the property; and

(4) if the property is real property, must include the legal description of the property.

The courts have imposed some other basic requirements for advertising a foreclosure sale of real property. The statute on sheriffs' sales requires the advertisement to identify the plaintiff and defendant. Ga.Code Ann. § 9–13–140(a). This makes sense for a sheriff's sale, but foreclosure of a security deed generally does not involve a plaintiff and defendant. The courts, however, have imposed a parallel requirement for a foreclosure sale; the advertisement must identify the grantor of the security deed and the foreclosing party, if it is someone other than the grantee of the security deed. Daniel F. Hinkel, *Pindar's Georgia Real Estate Law And Procedure With Forms* § 21–76.

Centex contends the failure to include the correct legal description in the first three advertisements did not make them ineffective because they gave the deed book number and page number where the security deed could be found in the property records, and the security deed contained the correct legal description.

The Georgia statutes do not require a foreclosure advertisement to include the deed book number and page number where the security deed is recorded. If the advertisement gives the wrong deed book number but gives the correct legal description, the advertisement meets the statutory requirements and is legally effective. *Oates v. Sea Island Bank,* 172 Ga. App. 178, 322 S.E.2d 291 (1984).

On the other hand, if an advertisement gives only the correct deed book number and page number of the security deed, without the legal description, it does not meet one of the basic statutory requirements and is not legally effective. *Credit Investment Corp. v. Maddox,* 182 Ga. 193, 184 S.E. 859 (1936) (also failed to identity

grantor and foreclosing party). This reasoning appears to apply to Centex's first three advertisements; the completely wrong legal description used in those advertisements can be treated as no legal description at all.

Centex argues against this result based on *Penn Mut. Life Ins. Co. v. Donalson,* 177 Ga. 84, 169 S.E. 337 (1933). In *Penn Mut.* the legal description in the security deed described the property as being in Decatur County. The foreclosure advertisement used the same legal description. It did not try to explain that after execution and recording of the security deed, the state had created a new county, Seminole County, that took in part of the property. The advertisement referred to the deed book and page where the security deed was recorded. The executor of the deceased grantor's estate argued that failure to describe the property as being partly in the new county, Seminole, confused potential bidders and chilled the sale. The court held that the reference in the advertisement to the location of the recorded security deed gave any potential bidder notice of what would be revealed by the property records. They would reveal that the property now in Seminole County was in Decatur County when the security deed was executed and recorded.

An earlier decision dealt with the other side of this problem in the context of a sheriff's sale. The advertisement did not use the exact legal description of the property that was in the recorded deed. The sheriff added some words in an attempt to explain that a new county had taken in part of the property after the deed was recorded. *Thomas v. Dockins,* 75 Ga. 347 (1885). The court upheld the sale. It reasoned that even with the added wording, the property description could apply only to the property being sold.

The two opinions make the point that the creation of a new county does not cause real property to move from one place to another. The correct legal description in a previously recorded instrument still correctly describes the property by metes and bounds. Anyone who follows the legal description will find that it applies to the part of the property in the new county. It remains the correct legal description for the purpose of advertising the property for sale. Furthermore, the property records in effect give notice that part of the property was taken in by a new county created after the instrument was recorded.

Thus, the court in *Penn Mut.* was dealing with the correct legal description in the advertisement. The question was whether the advertisement was still misleading because it did not give the additional information that part of the property had been taken in by a subsequently created county. The court held that the property records were notice of this fact. The court did not hold that the advertisement's reference to the location of the security deed in the property records would correct a wrong legal description or substitute for the correct legal description in an advertisement.

Another case involved the question of whether an advertisement must set out the transfers by which the foreclosing party acquired rights under the security deed. The advertisement met the basic requirement of correctly identifying the foreclosing party. The court held the advertisement was sufficient because it stated the location in the property records of the instrument that transferred the security deed to the foreclosing party. The court was not dealing with the failure of the advertisement to meet one of the basic requirements—the legal description of the property, the identity of the grantor, the identity of the foreclosing party, or the

time and place of the sale. *Redwine v. Frizzell,* 184 Ga. 230, 190 S.E. 789 (1937).

One other decision by the court of appeals deserves to be mentioned. *Shantha v. West Georgia National Bank,* 145 Ga. App. 712, 244 S.E.2d 643 (1978). It involved an unusual situation: the recorded deed and security deed contained errors, but the errors were corrected in the advertisement. The errors in the deed and security deed were typographical or flagrant for other reasons. The question was whether to confirm the foreclosure sale. The court of appeals said that the trial court was not concerned with whether the prior deed descriptions were sufficient. The issues were whether the advertisement was legally void and whether the sale was chilled. The court held that the foreclosure advertisement was correct and not legally void. The real problem was the disagreement between the correct description in the advertisement and the incorrect description in the recorded deeds. Did the disagreement result in chilling the sale? The court seems to have concluded that it did not because the errors in the recorded deeds were obviously inadvertent errors and could be corrected in the advertisement without causing confusion. The court did not hold that a foreclosure advertisement with no legal description or serious mistakes in the legal description is sufficient if it refers to a previously recorded instrument with the correct legal description.

In summary, the Georgia cases do not support a rule that an advertisement with a completely wrong legal description will be legally effective if it correctly identifies where the security deed, with the correct legal description, is recorded.

Centex next argues that the advertisement was legally effective because it gave the correct street address of the property. Centex is not arguing that an advertise-

ment with the correct street address but no legal description would meet the statutory requirement. The statute does not require an advertisement to include the street address. It requires the legal description. It provides that the advertisement may include the street address. The statute goes on to say that failure to include the street address or use of the wrong street address will not invalidate a foreclosure. Ga.Code Ann. § 9–13–140(a). The other relevant statute provides that when the street address is included in an advertisement, the address must be clearly set out in bold type. Ga.Code Ann. § 44–14–62. These rules leave no doubt that the correct street address is not a substitute for the legal description required by the statute.

Centex makes a more limited argument: use of the correct street address was sufficient to correct the error in the legal description. When the legal description in an advertisement contains some errors, the advertisement may still be sufficient. The Georgia courts have not required perfect compliance with the basic statutory requirements for an advertisement; substantial compliance is sufficient.

For example, one case involved an advertisement that gave the correct legal description with some mistakes. It repeated the line identifying the property as "Lot 10, Block D, Unit 1, Eagles Landing." The advertisement also referred to the security deed as being recorded at page 3 of a certain deed book; page 3 was part of the recorded security deed but not the first page. The court held that the advertisement was sufficient to make the sale valid. *Tarleton v. Griffin Federal Savings Bank,* 202 Ga.App. 454, 415 S.E.2d 4 (1992).

In another case the advertisement took up ten columns in the newspaper. The first two advertisements omitted a line of text referring to a lot described immediately below. They also used "southeast" for "southwest" two times. That kind of mistake is obvious since it will result in a description of property lines that do not meet. These mistakes were corrected in the final two advertisements. All four advertisements gave correct references to the deed book and page where the security deed was recorded. The court held that the advertisements substantially complied with the legal description requirement. *Williams v. South Central Farm Credit,* 215 Ga.App. 740, 452 S.E.2d 148 (1994).

In another case, the advertisement gave the correct legal description but did not include the "together with" clauses from the security deed. The court held the description was sufficient because the real estate would include the property covered by the "together with" clauses without regard to whether they were included or quoted. *National Community Builders, Inc. v. Citizens & Southern National Bank,* 232 Ga. 594, 207 S.E.2d 510 (1974).

Another aspect of *Penn Mut.* fits the substantial compliance rule, though it does not involve the property description. The advertisement did not exactly identify John E. Donalson as the grantor of the security deed. It said that the property was being sold to pay the indebtedness of John E. Donalson who is now deceased. The court held that this was a minor variance that did not affect the validity of the sale. *Penn Mut. Life Ins. Co. v. Donalson,* 177 Ga. 84, 169 S.E. 337 (1933).

The first three advertisements by Centex do not fit the pattern of these cases. Those advertisements did not include a generally correct legal description of the property with some mistakes. They gave a completely wrong legal description of the property. The street address could not correct this description; it could only cre-

ate a conflict since it applied to a different piece of property.

■ This brings the court to Centex's overriding argument, which the court has attempted to summarize, as follows. First, the question under Georgia law is whether the defect in the advertisements chilled the sale, and this is the controlling issue even if the defect is failure to meet one of the basic statutory requirements. Second, the party attempting to stop or invalidate the sale has the burden of proving that the defect in the advertisement chilled the sale. Third, though the chilling effect may be obvious in some cases, without testimony or other evidence to prove it, that reasoning does not apply to this advertisement because it contained enough correct information—the recording location of the security deed and the correct street address—to prevent it from chilling the sale by confusing or misleading potential bidders. Finally, since the Coopers have not presented any evidence in addition to the defective advertisements to show the sale was chilled, then the sale must be upheld.

A typical statement of the law in Georgia seems to mean that an advertisement may be legally effective even if it completely fails to meet one or more of the basic statutory requirements for an advertisement.

> The primary issue at a hearing for confirmation of a foreclosure sale under power ... is a judicial ascertainment that the property brought at least its true market value on the foreclosure sale. [Citation omitted.] The court must also pass on the "legality of the notice, advertisement, and regularity of the sale." [Citation omitted.] By inference, if the sale is irregular ... or if either the notice or the advertisement does not substantially meet legal requirements, the sale should be set aside. But not every irregularity or deficiency

at this point will void the sale[.] ... [T]he court's inquiry should go only to the value of the real estate on the date of the sale, [and] in the course of the examination ..., the fairness of the technical procedures ... may be examined, but only for the purpose of making sure that the sale was not chilled and the price bid was in fact market value.

*Shantha v. West Georgia National Bank,* 145 Ga.App. 712, 244 S.E.2d 643, 644 (1978).

Taken to the extreme, this statement seems to mean that a foreclosing creditor can skimp on compliance with the basic advertising requirements, depending on its tolerance for risk, and the defects will make no difference to the validity of the foreclosure sale unless the debtor can prove the sale was chilled as a result of the defects. Proving the sale was chilled can be difficult. Suppose the advertisement ran in the three weeks immediately before the week of the sale but not the fourth week before the sale. How can the debtor prove the sale was chilled? A foreclosure sale price that is far below the market value does not prove the sale was chilled by failure to substantially comply with the basic requirements for an advertisement. *Gunter v. Tucker Federal Savings and Loan Assoc.,* 237 Ga. 806, 229 S.E.2d 662 (1976). Must the debtor canvass readers of the papers in an attempt to prove the sale was chilled? *See Foster v. Farmers and Merchants Bank (In re Foster),* 108 B.R. 361 (Bankr.M.D.Ga.1989) (Chilling was proved by an inadequate price and testimony of inquiries about the sale when it was not held in the week after the last advertisement.). Similar problems are likely to arise with attempts to prove that other failures to meet the basic requirements for an advertisement actually chilled the sale.

The decisions in other Georgia cases seem to adopt either of two stricter rules. First, if the advertising does not substantially comply with the basic requirements for advertisement, the court will assume the defective advertising chilled the sale. Second, a sale can not be upheld if the advertising did not substantially comply with the basic requirements because the advertisement is not legally effective. The outcome is the same. If the advertising does not substantially comply with the basic requirements, then the foreclosure sale is not valid. If this is a correct expression of Georgia law, then the party challenging the sale has the burden of proving that defects in the advertisement chilled the sale only if the advertisement substantially complied with the basic requirements. *See, e.g., Credit Investment Corp. v. Maddox,* 182 Ga. 193, 184 S.E. 859 (1936) (no legal description, no identity of grantor, no identity of foreclosing party); *Cocke v. Bank of Dawson,* 180 Ga. 714, 180 S.E. 711 (1935) (no identity of a grantor that could legally be a grantor); *Proudfit v. Oliver,* 150 Ga. 707, 105 S.E. 241 (1920) (no advertisement in week before sale)[2]; *see also Carr v. Seagler,* 144 Ga. 99, 86 S.E. 238 (1915) (hearing required when winning bidder raised question of whether legal description agreed with general description by lot number). In these cases, the Georgia courts seemed to say that failure to substantially comply with the basic advertising requirements will invalidate a sale.[3]

These cases can be compared with the substantial compliance cases cited earlier. The courts have upheld sales when the advertisements did not perfectly comply with the basic statutory requirements, but they substantially complied. *National Community Builders, Inc. v. Citizens & Southern National Bank,* 232 Ga. 594, 207 S.E.2d 510 (1974); *Penn Mut. Life Ins. Co. v. Donalson,* 177 Ga. 84, 169 S.E. 337 (1933); *Williams v. South Central Farm Credit,* 215 Ga.App. 740, 452 S.E.2d 148 (1994); *Tarleton v. Griffin Federal Savings Bank,* 202 Ga.App. 454, 415 S.E.2d 4 (1992).

Of course, the question of whether an advertisement substantially complied with the basic statutory requirements raises the question of whether the shortcomings of the advertisement could have confused potential bidders. In other words, the question of whether the advertisement substantially complied with the basic requirements involves the question of whether the problems with the advertisement chilled the sale. This does not mean that when an advertisement fails to substantially comply with the basic requirements, the party attacking the sale must prove that the defects chilled the sale. At this point, the courts are concerned with weeding out challenges based on minor advertising problems that should not have adversely affected the sale.

The cases dealing with advertising that does not meet the basic requirements can also be contrasted with the numerous Georgia cases that involve information *not required by statute.* Suppose the advertisement included information not required by the statute. Was the additional information likely to mislead or cause confusion in potential bidders? *Boyce v. Hughes,*

---

**2.** The Georgia court of appeals subsequently took a different view, but the reasoning was not required to reach the decision. *Stripling v. Farmers & Merchants Bank,* 175 Ga.App. 75, 332 S.E.2d 373 (1985), *explained, Foster v. Farmers and Merchants Bank (In re Foster),* 108 B.R. 361 (Bankr.M.D.Ga.1989).

**3.** The sheriff's failure to comply with the advertising requirements of the statute will make him liable but will not invalidate a sale to an innocent purchaser. *Dooley v. Bohannon,* 191 Ga. 7, 11 S.E.2d 188 (1940); *Conley v. Redwine,* 109 Ga. 640, 35 S.E. 92 (1900).

241 Ga. 357, 245 S.E.2d 308 (1978) (amount of debt); *Southeast Timberlands, Inc. v. Security National Bank*, 220 Ga.App. 359, 469 S.E.2d 454 (1996) (amount of debt); *West Lumber Co. v. Schnuck*, 204 Ga. 827, 51 S.E.2d 644 (1949) (application of sale proceeds); *Thomas v. Dockins*, 75 Ga. 347 (1885) (change in county); *Walker v. Northeast Production Credit Assoc.*, 148 Ga.App. 121, 251 S.E.2d 92 (1978) (sale subject to senior lien). Suppose the advertisement did not include some information not required by the statute. The person attacking the sale may argue that the advertisement was likely to mislead or confuse potential bidders because it did not include the additional information. *Smith v. Citizens and Southern Financial Corp.*, 245 Ga. 850, 268 S.E.2d 157 (1980) (failure to mention senior lien); *Penn Mut. Life Ins. Co. v. Donalson*, 177 Ga. 84, 169 S.E. 337 (1933) (failure to mention change in county); *Hiers v. Exum*, 158 Ga. 19, 122 S.E. 784 (1924) (failure to state entire debt was due). Suppose the advertisement made a mistake in additional information not required by the statute. It raises the question of whether the mistake in the unrequired information made the advertisement misleading or confusing. *Oates v. Sea Island Bank*, 172 Ga.App. 178, 322 S.E.2d 291 (1984) (Reference to wrong deed book did not affect sale.).

These unrequired information cases fit very well into the rule that the controlling question is whether the advertisement chilled the sale. The court must decide whether the sale was chilled by including or leaving out information not required by statute. On the other hand, when the advertisement fails to substantially comply with the basic statutory requirements, the courts apparently assume the sale was chilled or will be chilled. In this regard, the decision in *Southeast Timberlands* states the rule of Georgia law as follows:

The minimum legal requirements of a foreclosure advertisement are prescribed in OCGA § 9–13–140(a), and only a failure to properly include those items will render the advertisement defective as a matter of law....

If a foreclosure advertisement is not defective as a matter of law, defects in it will prevent confirmation only if the factfinder determines that those defects "chilled" bidding and caused an inadequate selling price. [Citations omitted.] A primary object of the advertisement is to attract bidders ...; its contents are important to the process. Thus, "[e]rrors that would not confuse the bidding intentions of any potential bidder of sufficient mental capacity to enter into a binding contract for the sale of the real property do not show a chilling of the sale so that a fair market value bid was not obtained." *Williams v. South Central Farm Credit, ACA*, 215 Ga.App. 740, 742, 452 S.E.2d 148 (1994)....

*Southeast Timberlands, Inc. v. Security National Bank*, 220 Ga.App. 359, 469 S.E.2d 454, 456–457 (1996). This slightly different statement of the law appears to be accurate. Failure to substantially comply with the basic statutory requirements for advertising a foreclosure sale will make the advertisement legally ineffective, and as a result, the sale is invalid—even if the opposing party does not present other evidence that the sale was chilled by the problems with the advertising.

The court suspects the same rule applies when the advertising fails to substantially comply with a basic requirement imposed by the courts, such as including the identity of the grantor and the identity of the foreclosing party. *Credit Investment Corp. v. Maddox*, 182 Ga. 193, 184 S.E. 859 (1936) (no legal description, no identity of grantor, no identity of foreclosing party); *Cocke v. Bank of Dawson*, 180 Ga. 714, 180

S.E. 711 (1935) (identified grantor could not legally be a grantor). The court need not deal with that problem, however, because this case involves the statutory requirements.

The statute requires advertisement with the legal description of the real property for four weeks before the sale. Centex's first three advertisements gave a completely wrong legal description. The property was advertised only once with the correct legal description, and that was in the week before the sale. This was not substantial compliance with the statutory requirements. As a result, the advertisement was not legally effective, and the sale was invalid.

■ Moreover, the court concludes that the sale in question can not be upheld even if the debtors are required to prove the sale was chilled. The use of the completely wrong legal description in the first three advertisements was not cured by use of the correct street address and reference to the recording location of the security deed. The combination of this information was more likely to confuse potential bidders than provide them with a clear picture of what was being sold. A potential bidder could go to the real estate records and find the security deed. This would have revealed that the grantors and the street address in the security deed matched the advertisement, but the legal description did not. This would leave the potential bidder with the question of why the first three advertisements used a completely different legal description. Did Centex have a different security deed from the Coopers on a different piece of property, the one described in the advertisements? Did Centex have the wrong debtors and the wrong property listed in the advertisement? That is, did it intend to foreclose on the property legally described in the advertisement but identified the wrong grantors and the wrong security deed and gave the wrong street address? By inspecting the real estate records, a potential bidder might eventually answer these questions and conclude that Centex meant to sell the property in question. But this would not be a simple, easy search of the real estate records. Thus, the first three advertisements were obviously confusing for potential bidders.

The fourth and final advertisement with the correct legal description was not enough by itself to cure the problem. The advertising gave the correct legal description of the property only once, and that was in the fourth and final advertisement the week before the sale. There were only five days between the first day the fourth advertisement was published and the day of the sale. Potential bidders who followed the advertising were likely to be even more confused by the corrected advertisement late in the process. Indeed, the obvious problem with the advertising would discourage knowledgeable prospective bidders; they would justifiably expect the sale to be invalidated if the debtors challenged it. *Cocke v. Bank of Dawson*, 180 Ga. 714, 180 S.E. 711 (1935). Based on these facts, the court concludes the defective advertising chilled the sale and rendered it invalid. As to the amount of the successful bid at the foreclosure sale, neither party has presented any evidence. The court thinks it should not make a difference because advertising the property correctly for less than a week before the sale was simply too far from compliance with the basic statutory requirements.

The motion to validate the foreclosure sale will be denied, and the case shall continue under the previously confirmed plan.

This Memorandum constitutes findings of fact and conclusions of law as required by *Fed. R. Bankr.P.* 7052.

## ORDER

In accordance with the court's Memorandum entered this date,

It is ORDERED that the motion by Centex Home Equity Company, L.L.C., to validate foreclosure sale and motion for relief from stay is denied;

It is FURTHER ORDERED that the case shall continue under the previously confirmed plan.