39065. COLEVINS *et al.* v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

DECIDED DECEMBER 5, 1961—REHEARING DENIED DECEMBER 20, 1961.

*George Carroll,* for plaintiffs in error.

*Smith, Field, Ringel, Martin & Carr, Sam F. Lowe, Jr.,* contra.

BELL, Judge. 1. The petition on which this action is based contains allegations similar to those shown in the case of *Jordan v. General Ins. Co. of America,* 92 Ga. App. 77, 79 (88 SE2d 198). In the *Jordan* case in an action on a fire insurance policy brought to have set aside an appraiser's award because of mistake and fraud, it was alleged: that the appraisement award as to the house was based on mistake in that the appraisers were under misapprehension as to what portion of the house was usable in making their estimate of the cost of repairing the house and also as to the usableness of the plumbing in repairing the house; that the appraisers thus failed to take into account the fair and reasonable market value of the house; that the appraisement award as to the house and furnishings was inadequate, unfair, and a mistake as to the house. In holding that the petition stated a cause of action, this court decided that the appraisement award is the result of a mere contractual method of ascertaining the loss; that the award is not decisive of the question of the insurer's ultimate liability, since a suit on the policy would be determinative of that issue. There the allgations of the petition raised a question of fact for the determination of the jury as to whether or not the award was so inadequate as to be fraudulent.

The record here reveals that one of the plaintiffs' witnesses testified that he built the house which was insured; that the materials used in its construction amounted to over $6,000; that it consisted of five rooms; that the house itself was 1,050 feet and the porch was 80 feet; and that the whole house, including the porch, totaled 1,130 square feet.

One of the two appraisers testified that he, the other appraiser, and the umpire went to the site of the fire discussed and measured between the pillars that were left; that he could not determine what kind of structure he was appraising from what he saw; that he had examined the remains previously and at that time there was a sufficient amount of residue to give him a gen-

eral outline of the building; and "We measured up the footings that were left, the pillars that were left . . .. we measured that up and went over the type of structure it was. . ." On cross-examination the appraiser testified that the evidence he examined to tell the size of the premises was the burned-out hull of the building still in existence, sitting on the pillars, "it consisted of three rooms"; "the entire floor area was to be replaced with 756 board foot of pine flooring." This appraiser further testified that the 756 board feet of flooring would cover a little better than 500 feet of square area.

A comparison of the appraiser's testimony with that of the plaintiffs' witness indicates that there was a conflict in the evidence at least as to the size of the house and the number of rooms; thus the jury could have found the appraisers based their award upon the size of the house being three rooms with slightly over 500 square feet of area, while the plaintiffs' witness's testimony would have allowed the jury to find it had five rooms and an area of 1,130 square feet.

There were a number of other questions of fact which should have been submitted to the jury for their decision. The appraiser selected by the defendant testified that the building was substandard—a substandard structure—while the plaintiffs' evidence was that the flooring was No. 1 pine flooring; that the structure had a 20-year roof on it; and that the materials alone cost more than $6,000.

There was also testimony of the defendant's appraiser that the contents of the house were found by him not to be of the type or quality which the plaintiffs' witness testified they were. This same appraiser testified, "We gave three-fourths of the coverage on the contents," and, "I think probably . . . that we didn't know too much about the contents, nobody knew too much about the contents."

There was a conflict in the evidence as to how much of the structure remained at the time the appraiser and umpire viewed the remains of the house. The defendant's appraiser testified that he had been to the scene at a previous date and examined the structure, and at the time there was a sufficient amount of the residue to give him a general outline of the building; that

he found a part of the roof structure, a part of the side walls, and the flooring; that there were window openings and window sash all still in the openings, and the screens were there; and the pillars were still there. In contrast, a member of the DeKalb County Police Department testified that he visited the scene; that the house was a total loss; that the only thing he saw was a chimney, and that he did not recall seeing any part of the house such as parts of the floor, windows, or door. A member of the Volunteer Fire Department testified that the house was completely consumed by the fire and that he did not remember any distinguishable parts of the house remaining.

There was in the record testimony that plaintiffs' witness offered to the appraiser and umpire a sketch of the building, and wanted to bring in some of the neighbors to tell them what type of structure it was, but that the defendant's appraiser did not have any discussion with the witness or ask any questions at all, and "he [defendant's appraiser] got a little vexed with Mr. Colevins trying to tell us [the appraisers and umpire] what he had and told him in more or less words that we didn't need his assistance."

In view of these conflicts in the evidence and other circumstances present here, a jury issue was raised as to whether the appraiser and the umpire had any adequate basis for determining the value of the property destroyed and whether they had made a sufficient investigation to determine the size, type of construction, the quality and value of materials used therein, and the contents of the house. Under all the circumstances of this case, the jury would have been authorized to find that the award was so inadequate as to be fraudulent. *Jordan v. General Ins. Co. of America,* 92 Ga. App. 77, supra.

The trial court erred in directing the jury to return a verdict for the amount of the appraisal, and, therefore, improperly overruled grounds 4 and 6 of the amended motion for a new trial.

2. The trial court's judgment denying the motion for new trial having been reversed for the reasons stated in division 1 of this opinion, it is unnecessary to rule upon ground 5 of the amended motion. This ground urges that a new trial should have been granted because there was sufficient evidence in the

record to authorize a jury verdict in favor of the plaintiffs for the statutory penalty and attorney's fees because the insurance company had acted in bad faith. Any ruling upon this question must await the new trial, for the reason that the evidence adduced on a later trial might or might not show bad faith.

*Judgment reversed. Felton, C. J., and Hall, J., concur.*