61321. J. C. PENNEY COMPANY, INC. et al. v. DAVIS & DAVIS, INC.
61322. ASSOCIATED BUILDING SYSTEMS, INC. et al. v. DAVIS & DAVIS, INC.

SHULMAN, Presiding Judge.

J. C. Penney Company, Inc. entered into a contract with Associated Building Systems, Inc. (hereinafter "ABS") to make specified construction repairs to certain J. C. Penney buildings. ABS entered into a subcontract with plaintiff Davis & Davis, Inc. to perform a portion of the work (sheet metal work). Upon J. C. Penney's rejection of plaintiff's work product and the coincident and subsequent refusal of ABS to compensate plaintiff in accordance with their subcontract, plaintiff brought suit against J. C. Penney for tortious interference with a contractual agreement and against ABS in contract (for breach of contract) and in tort for its alleged conspiracy to tortiously interfere with a contractual agreement. The jury returned verdicts against both defendants. On appeal, we reverse the judgments entered on those verdicts.

1. Defendants raised on appeal several grounds on which they contend directed verdicts should be granted. Only two grounds were raised by defendants on motions for directed verdict at trial. In accordance with plaintiff's contentions, we will consider on appeal only those grounds for reversal raised by defendants on motion for directed verdict. See *Adams v. Smith,* 129 Ga. App. 850 (6) (201 SE2d

639).

Contrary to plaintiff's assertion at trial that defendant J. C. Penney wrongfully rejected plaintiff's work product, J. C. Penney claimed that it had an absolute right to reject the defective panels installed by plaintiff. ABS' agreement with Davis & Davis, Inc. to perform sheet metal assembly and sheet metal coping work in the J. C. Penney buildings provided that: "The subcontractor hereby certifies that he has carefully examined all the applicable plans and specifications, prepared for the entire work, of which the work covered by this subcontract is a part. Said plans and specifications are hereby referred to and made a part of the subcontract. *The subcontractor and his subcontractors will be and are bound by said plans and specifications* insofar as they relate to the work undertaken herein." (Emphasis supplied.)

Incorporated within the contractual specifications were the "General Conditions of the Design and Build Construction Contract." The general conditions expressly provided that J. C. Penney had the right to inspect the workmanship and materials utilized in the construction and to reject workmanship or materials which did not conform to the specifications.

Plaintiff does not dispute that the product it delivered was not in accordance with contractual specifications (i.e., that "sheet metal items shall be true to line, without buckling, creasing, warp or wind in finished surfaces"). Plaintiff admitted that the work did buckle and crease but argued that faulty or defective design specifications made it impossible to produce work that conformed to all the contractual specifications. Plaintiff argued that since the work, as specified, could not be performed, J. C. Penney wrongfully rejected plaintiff's work, thereby tortiously interfering with plaintiff's contractual agreement with ABS. Plaintiff's arguments are not convincing. We find *Rebel Sales Co. v. McDuffie & Assoc.,* 142 Ga. App. 693 (237 SE2d 6), controlling authority for a reversal of the judgment entered in favor of plaintiff and the grant of defendant J. C. Penney's motion for directed verdict.

As in *Rebel Sales Co.,* plaintiff in the instant case asserted that defendant J. C. Penney wrongfully denied or refused its approval of plaintiff's work. Plaintiff asserted that J. C. Penney's rejection was tortious for the reason that the contracted-for work was impossible to perform — that J. C. Penney was aware of its impossibility and thus exhibited bad faith in rejecting plaintiff's work product as unsatisfactory. Plaintiff acknowledges the fact that its work did not conform to contractual specifications. Inasmuch as the contract provided that J. C. Penney had the right to reject non-conforming work, plaintiff simply did not make out a case of tortious interference

with a contractual relationship. Plaintiff has failed to show that J. C. Penney's rejection of its work was wrongful. See *Rebel Sales Co.,* supra.

The fact that it was impossible to perform the work in accordance with contractual specifications has no bearing on the validity of defendant's rejection; in other words, it is not indicative of defendant's bad faith. In any event, defendant J. C. Penney had an absolute right to reject work that did not conform to contractual specifications, which right " 'can be exercised without incurring liability regardless of the motive for so doing.' " *Schaeffer v. King,* 223 Ga. 468, 470 (155 SE2d 815). So, regardless of whether defendant could be said to have acted in bad faith, its exercise of its absolute right to reject work that did not meet bargained-for specifications cannot form the basis of a recovery in a suit for tortious interference with a contractual relationship. "There is no liability for interference with a contractual relationship where the alleged interference is caused by the exercise of an absolute right." *Rebel Sales Co.,* supra, p. 693.

Moreover, it would be illogical and paradoxical, not to mention unjust, to require the defendant J. C. Penney to accept work which did not meet contractual specifications because the work could not be performed as specified, but to allow the plaintiff to assert such impossibility as a defense to a breach of contract action. See Code Ann. § 20-111. We find, then, that the trial court erred in denying defendant J. C. Penney's motion for directed verdict.

Since we have reversed the denial of defendant J. C. Penney's motion for directed verdict for the reasons stated above, we need not address defendant J. C. Penney's remaining enumerations of error.

2. We next turn to plaintiff's claims against ABS. Plaintiff was awarded damages against ABS in both tort and contract. Plaintiff's tort action was premised upon ABS' alleged conspiracy with J. C. Penney to tortiously interfere with a contractual relationship. In Division 1, we found that J. C. Penney could not be held liable for tortious interference. It follows, then, that plaintiff's claim of conspiracy against ABS (to do an act which this court has found to be lawful) must also fail. See *Tate v. Aetna Cas. & Surety Co.,* 149 Ga. App. 123 (253 SE2d 775), regarding the merits of plaintiff's suit in tort.

In regard to plaintiff's claim against ABS for breach of contract, plaintiff argued that ABS' requirement of specifications which were inherently impossible to perform, in conjunction with its failure or refusal to modify or alter the specifications in order to allow for the making of a satisfactory product, constituted a breach of contract. We must take issue with plaintiff's argument.

Defendant ABS was totally within its rights in refusing a product which did not meet all of its bargained-for specifications — specifications that were negotiated by both parties at arm's length. The fact that the defendant may have been or was unwilling to strike a new bargain or renegotiate the parties' original contract does not constitute a breach of that contract. It was not the defendant's intent which precluded plaintiff from performing the contract as specified; rather, as plaintiff admits, the impossibility of proper completion was inherent in the design specifications.

As was stated in *Friedman v. Goodman,* 222 Ga. 613, 617 (151 SE2d 455), "where the [plaintiff] contract[s] to perform covenants that are impossible, *not because of an act of God or the conduct of the [defendant],* the failure to perform such covenants is as fatal to the plaintiff['s] right to recover as a breach of the contract for any other reason." (Emphasis supplied.) With that in mind, we hold that the plaintiff cannot recover against defendant ABS for breach of contract, since the covenants of the contract were, by plaintiff's own admission, impossible to perform as specified.

Since we have reversed the trial court's judgment against defendant ABS for the foregoing reasons, we will not address remaining enumerations of error advanced by defendant ABS.

*Judgments reversed. Birdsong and Sognier, JJ., concur.*

DECIDED MARCH 16, 1981 —
REHEARING DENIED APRIL 1, 1981.

*Robert C. Lamar,* for appellants (case no. 61321).
*James C. Simmons, Jr., Bruce B. Weddell,* for appellee.
*Bruce B. Weddell,* for appellants (case no. 61322).
*James C. Simmons, Jr., Robert C. Lamar,* for appellee.