72384. SYSTEMS ENGINEERING ASSOCIATES,
INVESTIGATION DIVISION, INC. v. PEACHTREE
CORNERS, INC. et al.
(345 SE2d 136)

BIRDSONG, Presiding Judge.

Summary Judgment — Contract Interpretation. This convoluted case produced over 1,600 pages of pleadings and discovery before the trial court granted summary judgment to the appellees, Peachtree Corners, Inc. and Poole. The circumstances and actions giving rise to the appeal reflect the following occurrences. On March 22, 1972, a partnership bearing the name Corridor Investment Associates, consisting of two persons (Duke and Poole) and a corporation (Peachtree Corners, Inc. (PCI)) principally owned by one (Duke), sold a tract of land located in Peachtree Corners to another of the named defendants, B&N Enterprises owned by Booth and Noack. The tract of land had a 10,000-square-foot building consisting mainly of warehouse space but with office space contained in a portion of the building. At the time of the sale, B&N placed a mortgage on the building with a bank and agreed by the terms of the sale that if B&N wished to sell the building to a third party, B&N would extend a right of first refusal to Corridor Investment.

Over the next several years B&N leased the warehouse to several tenants, the first of which retained possession for only a short time. In about 1976, B&N first leased the building (or a portion thereof) to Systems Engineering Associates (SEA). This lease was renegotiated on several occasions. At the insistence of the CEO of SEA, the several leases contained a right of first refusal to purchase the building by SEA if B&N elected to sell the warehouse.

In 1984 because Booth was suffering poor health, Booth and Noack decided to sell the building. The record is clear that neither Booth nor Noack, nor their agent Keel, had any knowledge of the right of first refusal held by Corridor Investment in the 1972 warranty deed. As a result, Keel, acting on behalf of B&N offered the property to SEA on the assumption that SEA had the right of first refusal. The negotiations were initially successful and SEA indicated it wished to exercise the right to purchase the building. The negotiations between the parties were that B&N would sell the warehouse to SEA for $190,000 without a new roof with an assumption of the mortgage, or SEA could assume the old mortgage with a new roof on the building, with an additional $20,200 added to the principal. SEA elected to purchase the building together with the new roof and was prepared to sign a mortgage for $210,200. SEA turned over the final preparations of the deeds and supporting documents to its attorney. The sales contract between B&N and SEA called for the closing to occur within 30 days. For one reason or another, SEA did not complete its prelimi-

nary negotiations within the 30 days. However, even though B&N considered the offer to sell to SEA as having expired, the record is clear that B&N together with its agent Keel intended to proceed with the belated closing.

During the title search by SEA's legal representative, it was disclosed that a right of first refusal still existed in Corridor Investment. When this was brought to the attention of B&N and SEA, it was decided that B&N would obtain a quitclaim deed from Corridor Investment and proceed with the sale to SEA. However, after some initial hesitation and confusion, Corridor Investment elected to repurchase the property by exercising its right of first refusal. When B&N became aware that Corridor Investment desired to repurchase the property, and being satisfied that the offer to SEA had technically expired, B&N had appropriate documents prepared selling the property to Poole and PCI. Poole and PCI did not wish to finance a new roof and thus purchased the building and land for the first price quoted to SEA of $190,000. SEA protested the sale of the property to Poole and PCI and ultimately brought suit against Poole, PCI, B&N Enterprises and Booth and Noack individually, the real estate agent Keel and his company, and against another real estate company who had participated in the original sale between Corridor Investment and B&N. Several of the defendants including Poole and PCI moved for summary judgment. The trial court denied summary judgment to other defendants but granted such judgment to Poole and PCI. SEA brings this appeal to that grant of summary judgment, raising several legal issues as a support for their appeal. *Held*:

1. Poole and PCI have moved this court to dismiss SEA's brief and the appeal because SEA has not properly documented its brief by appropriate references to the record. In an appropriate case, this court indeed will impose sanctions for failure to abide by the rules of this court. We do not consider this to be such a case and accordingly deny the motion to dismiss.

2. In its first two enumerations, SEA in effect urges us to find there remains a significant issue of fact as to whether the right of refusal (clearly vested in Corridor Investment) legally was exercised by Poole and PCI. This facet of the enumeration of errors finds its genesis in the fact that Corridor Investment was a specified partnership consisting of Poole, Duke and PCI with Poole owning a 50% equity and Duke and PCI each owning a 25% equity. It is clear from the closing documents in the resale that Duke was not present and did not sign or personally participate in the purchase though Poole and PCI did personally make the purchase. What this argument overlooks is that there was unrebutted evidence in the deposition taken from Duke that in the ensuing years from 1972 until 1984, one Valerius had become the president of Peachtree Corners, Inc. and acted for

the corporation *and* the partnership (Corridor Investment). The closing documents reflect the signatures of both Valerius and Poole, the two principals representing all the parties of Corridor Investment. Thus as a matter of fact, we conclude as did the trial court that the resale was in fact and law to Corridor Investment, the holder of the first right of refusal.

3. In its third enumeration of error, SEA argues there remained questions of fact as to whether Corridor Investment repurchased the property on the same terms as offered to SEA, a requirement mandated by the retained right of first refusal. SEA contends that it agreed to pay $210,200 for the property but Corridor Investment paid only $190,000; SEA's contract called for a real estate commission of 5% whereas Corridor's paid 6%; and Corridor's contract required Corridor to continue to pay a real estate commission to a real estate firm based upon the lease payments continuing under the lease of the property by SEA to the new owner, whereas if SEA was the purchaser there would be no continuing lease payments calling for a com- mission.

We find each of these arguments to be without legal significance. The initial offer to SEA gave the alternative to SEA to purchase the building with or without a new roof. If without a new roof, the price was $190,000 (the price paid by Corridor) or with a new roof but giving SEA the right to add that figure to the refinanced cost. As to the one percent additional real estate commission, there is evidence that Keel (the agent involved) would receive the extra percent whoever the purchaser might be. More important, however, is the fact that the real estate fee did not affect the purchase price for the fee was paid by the seller and not the purchaser. The same argument prevails as to the continuing payment of real estate fees based upon the continuing lease rental payments. These payments did not affect the cost of the property. Neither do we consider as material the argument that a new roof would have added to the value of the building so as to vary the terms of the contract. A new roof was at best an inchoate possibility and as such did not vary the terms of the contract between B&N and SEA or Corridor. We concur with the conclusion of the trial court that the terms of the sale to Corridor Investment were consistent with the bona fide offer by SEA to purchase the property.

4. SEA contends that the trial court erred in concluding that Poole and Valerius, acting for Duke and PCI, did not commit any fraud against SEA. We must reject this argument. The record contains no evidence that Corridor Investment (or its principals) ever had any communication with SEA. All Corridor did was to purchase property which SEA also had an ostensible right to purchase. Assuming (as we must) that Corridor Investment had a prior and legally unassailable right to purchase the property, there can be no liability

based on fraud for the exercise of an absolute right. *J. C. Penney Co. v. Davis & Davis*, 158 Ga. App. 169, 171 (279 SE2d 461). The only real argument advanced by SEA contending that Corridor did not have such right was based on the assumption that the purchasers were not the same parties constituting the partnership composing Corridor Investment. As noted earlier, this assumption has no basis in fact or law. This same conclusion eliminates SEA's last enumeration of error that the trial court erred in finding that Poole and PCI did not interfere with the contractual rights of SEA to purchase the property itself for Corridor only exercised a right which legally it had an absolute right to exercise. *J. C. Penney Co. v. Davis & Davis*, supra.
 *Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED MAY 7, 1986.

*Salvatore J. Serio, William W. Lavigno III*, for appellant.
*Thomas Fisher, H. Darrell Greene, Stanley Snellings*, for appellees.