75965. SOUTHERN GENERAL INSURANCE COMPANY
v. KENT et al.
(370 SE2d 663)

BENHAM, Judge.

Appellant Southern General Insurance Company appeals from the judgment entered on a jury verdict in favor of its insureds, appellees Kent. Appellant contends the trial court erred in failing to direct verdicts in the various aspects of the case and in failing to give a charge on impeachment.

In their complaint, appellees alleged that appellant had, in bad faith, refused to pay appellees for the insured loss. In an amendment, appellees contended that appellant had breached its contract with them and defrauded them by failing to pay the amount of damages as determined by their appraisers. The jury awarded appellees $5,000 for damages to the house and, under OCGA § 33-4-6, $1,000 attorney fees and $1,000 penalty.

Appellees owned a home covered by a policy of insurance issued by appellant. That policy covered "the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss. . ." The insurance policy also contained an appraisal clause: "In case the insured and this Company shall fail to agree as to the actual cash value or amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected . . . The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item;

and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss."

In November 1985, the home suffered damage when roofing shingles were blown off during a windstorm associated with a hurricane. Appellant's adjustor visited the insured premises in December 1985 and appraised the roof damage and resulting interior water damage at $1,687.20, a figure appellees were unwilling to accept. The adjustor returned to the premises with contractors and after consulting with them, increased the damage appraisal slightly. In February 1986, the contractors, this time at appellees' request, estimated it would cost $13,900 to replace the entire roof and to replace the interior ceilings, walls, and carpeting. Since appellant refused to pay $13,900 and appellees refused to accept what appellant offered, appellant invoked the appraisal clause of the insurance contract. The umpire made an award of $3,099.72 and appellant tendered $2,999.72 (the award less the $100 deductible), which appellees refused. They subsequently filed this lawsuit.

1. Appellant contends that the appraisal award was binding upon the parties and that the trial court erred in refusing to direct a verdict accordingly.

An appraisement award is the result of a contractual method of ascertaining the amount of loss, and it is binding on the parties as to the amount of loss unless the award is set aside. *Jordan v. Gen. Ins. Co.*, 92 Ga. App. 77 (2) (88 SE2d 198) (1955). There exists a presumption in favor of the regularity and fairness of appraisement awards, and it is difficult to set them aside. *Pacific Nat. &c. Ins. Co. v. Beavers*, 87 Ga. App. 294 (4) (73 SE2d 765) (1952). While an award may be attacked for any reason that would void a contract, as well as for fraud in the arbitration or in either party in obtaining the award, for a palpable mistake of law or for deciding any matter by chance or lot, "where there is no evidence of fraud, oppression, irregularity, or unfairness, other than on the disputed issue of value, and no other circumstances tending to raise the issue, a verdict in the amount of the award is demanded." Id. Thus, unless there is fraud sufficient to set the appraisement award aside, the trial court should have directed a verdict of $3,099.72 on the issue of amount of loss.

Appellees maintain that appellant's refusal to pay the amount of damages as calculated by the contractors used by appellees as an appraiser amounted to fraud on appellant's part. Appellees contend that since the contractors initially visited the insured premises at the request of appellant's adjustor, the contractors were appellant's appraisers and appellant was bound by their repair estimate. We disagree with appellees' position. The fraud alleged by appellees did not constitute an attack upon the arbitration award or in the method

used to obtain it. Compare *Colevins v. Nat. Union &c. Ins. Co.*, 105 Ga. App. 169 (1) (123 SE2d 559) (1961); *Jordan v. Gen. Ins. Co.*, supra; *Pacific Nat. &c. Ins. Co. v. Beavers*, supra. Therefore, a verdict in the amount of the award was demanded. Id. Even if appellees' allegations of fraud are taken as true, the allegedly fraudulent action (failing to pay appellees the amount the contractors estimated for repairing the damage by replacing items) took place prior to the demand for arbitration when the parties were unable to agree upon the amount of loss. Once the impartial observer, selected by representatives of both parties, made a determination of the amount of loss, any argument concerning value became moot as long as there was no argument that the appraisement award was reached through fraud or mistake. Since the umpire's decision was unvilified, appellees' attack on appellant's pre-appraisement position on the amount of loss was moot, and the trial court should have directed a verdict on the amount of loss as being that determined by the umpire.

Appellees contend that the appraisement award was not binding because the contract of insurance provided that suit could be filed on the policy after "all the requirements of this policy have been complied with. . ." Appellees maintain that the appraisal process was merely a non-binding prerequisite to filing suit on the policy. We disagree. The appraisal clause determines amount of loss. A suit on the policy is necessary to determine liability. See *Yates v. Cotton States &c. Ins. Co.*, 114 Ga. App. 360, 361 (151 SE2d 523) (1966); *Jordan v. Gen. Ins. Co.*, supra, Division 2. The appraisal process is not merely a prerequisite to filing suit, but the method by which the parties have contractually agreed to settle their differences with regard to the amount of loss.

2. Appellant also sought and was denied a directed verdict on the issue of attorney fees and penalties assessed pursuant to OCGA § 33-4-6.

" 'In an action to recover penalties and attorney fees for the refusal of an insurer to pay a claim it must be shown that the refusal was in "bad faith" [cits.], and the burden is on the insured to show that such refusal was made in bad faith. (Cits.) "Bad faith" . . . means "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." (Cits.) The provision for damages and attorney fees, being in the nature of a penalty, must be strictly construed, and in order for a recovery of such items to be had it must appear from the evidence that the company in bad faith refused to pay the claim within 60 days after a demand had been made. (Cit.) "The recovery provided in OCGA § 33-4-6 is a penalty. Penalties and forfeitures are not favored. The right to such recovery must be clearly shown." [Cits.]' " *Progressive Cas. Ins. Co. v. Avery*, 165 Ga. App. 703 (1) (302

SE2d 605) (1983).

Appellees, through their attorney, demanded payment of $13,900 in a letter dated February 21, 1986. Eight days earlier, in response to another letter from appellees' attorney, appellant had invoked, in writing, the appraisal clause of the insurance policy. Appellees acknowledged appellant's invocation of the appraisal clause in a letter dated March 3, 1986, and named their appraiser in a letter dated March 28. Notification of the umpire selected by the appraisers was given in a letter dated June 9, and the umpire rendered his decision on July 21. On July 30, 1986, appellant sent a check for $2,999.72 to appellees' counsel, who returned the check on August 7 and filed the lawsuit on August 14, 1986.

Based on the fact that the period of limitation in which one may file suit is tolled during the pendency of appraisal proceedings (*Beavers v. Pacific Nat. &c. Ins. Co.*, 85 Ga. App. 240 (68 SE2d 717) (1952)), we hold that the 60-day period of OCGA § 33-4-6 is likewise tolled during the pendency of appraisal proceedings. Appellees' demand letter of February 21 was written after the appraisal clause was invoked by appellant. Even if it is deemed that the appraisal proceedings were not "pending" until appellees agreed to the process, that occurred, at the latest, on March 28, 35 days after the demand, and payment pursuant to the appraisal award was tendered by appellant on July 30, nine days after the award. Thus, 60 days did not elapse between demand and refusal to pay. Therefore, appellees were absolutely barred from recovery of a bad faith penalty and attorney fees under OCGA § 33-4-6. *Blue Cross & Blue Shield &c. v. Merrell*, 170 Ga. App. 86, 87 (316 SE2d 548) (1984).

Furthermore, appellees' demand for payment of $13,900 was mooted by the umpire's uncontested award of $3,099.72. There was no demand made upon appellant to pay $3,099.72, and appellant tendered the amount awarded by the umpire within days of the award.

In summary, we reverse the trial court's denial of appellant's motions for directed verdict and remand with direction that judgment in the amount of the umpire's award be entered in favor of appellees.

3. In light of our disposition of this case in Divisions 1 and 2, we need not consider appellant's remaining enumerations of error.

*Judgment reversed and case remanded with direction. McMurray, P. J., and Pope, J., concur.*

DECIDED JUNE 10, 1988.

*Wilson R. Smith*, for appellant.
*Tom W. Thomas*, for appellees.