A05A0726. McGOWAN v. PROGRESSIVE PREFERRED
INSURANCE COMPANY et al.
A05A1077. DASHER v. ATLANTA CASUALTY COMPANY et al.
A05A1090. WALKER v. STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY et al.

(618 SE2d 139)

RUFFIN, Chief Judge.

Harry McGowan, Dorothy Dasher, and Mary Walker filed separate suits against their respective insurance companies and CCC Information Services, Inc. (CCC).[1] Although the factual circumstances in each case vary slightly, each insured's vehicle was a total loss and the insurer paid or offered to pay compensation for that loss. Their suits named CCC as a defendant based upon allegations that CCC had provided flawed and inaccurate valuations of their vehicles to their insurers and that CCC derived its valuation system in a manner that violated Georgia law.[2] They alleged that CCC's methodology for valuing vehicles did not properly and accurately determine the fair market value of their vehicles with the statistical validity required by law, resulting in undervaluing their vehicles. Relying upon that fundamental premise, their claims included fraud in the inducement, breach of contract, and Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act violations, and each complaint sought class action certification. In essence, they alleged that their insurance companies had conspired with CCC to deliberately undervalue their losses.

While the three suits were pending, the trial court ordered the enforcement of an appraisal provision in the respective insurance contracts. Each court-ordered appraisal resulted in a valuation greater than that determined by the insurer. Thereafter, Walker, Dasher, and McGowan amended their complaints to raise additional claims. After further review, however, the trial court dismissed each action in its entirety, finding all issues moot, primarily because no claims remained that were independent of the valuation disputes. For the reasons that follow, we affirm.

### Case Nos. A05A0726 and A05A1077

McGowan and Dasher have raised identical issues in their enumerations of error. In the interest of judicial economy we have combined

---

[1] The Dasher and Walker cases were transferred to the judge assigned to the McGowan case.

[2] CCC is a Chicago-based company that provides information services that include total loss vehicle valuations to the automobile claims industry.

their appeals. In Case No. A05A0726, McGowan appeals the dismissal of his claims, and in Case No. A05A1077, Dasher does likewise.

The record shows that McGowan owned a 1996 Mazda B40004X2 Le Cab Plus insured by Progressive Preferred Insurance Company. On September 13, 1999, McGowan was involved in an automobile collision that resulted in the destruction of his Mazda. McGowan's policy obligated Progressive to pay the fair retail replacement value of a vehicle comparable to that of his vehicle before the loss, subject to the applicable deductible. Progressive offered McGowan $11,318 and purportedly justified its offer using a CCC valuation.

McGowan's policy provided that if he and Progressive did not agree on the amount of a loss, either could demand an appraisal. The policy stated:

> If we cannot agree with you on the amount of your loss, then you or we may demand an appraisal of the loss. Each party shall appoint a competent and disinterested appraiser. If the appraisers agree on the amount of the loss, they shall submit a written report to us and this shall be deemed to be the amount of the loss. If the appraisers cannot agree within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within fifteen (15) days, either you or we may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the Policy, a written agreement signed by two of these three will then be the amount of the loss.

The trial court granted Progressive's motion to compel McGowan to submit to an appraisal of his totaled vehicle. The appraisal process determined the value of McGowan's loss as $13,300.

The record shows that Dasher was the owner of a 1995 GMC Safari van insured by Atlanta Casualty Company (AC). Her van was totaled in August 1999. The insurance policy required AC to pay the "actual cash value" of the van less a deductible of $500. Dasher's policy also had an appraisal provision, which AC invoked. This provision stated:

> If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select a third appraiser. The appraisers will state separately the actual cash value and the amount of loss. If they fail to

agree, they will submit their differences to the third appraiser. A decision agreed to by any two will be binding.

The policy required each party to pay its chosen appraiser and to share in the cost of any third appraiser.

An independent appraiser selected by AC inspected the van and determined it to be a total loss, but mistakenly identified the vehicle as a two-door cargo van instead of a four-door passenger van. When AC requested an evaluation report from CCC, CCC also misidentified the van as a cargo van and valued it at $9,821. Settlement negotiations ended with AC's final offer of $10,634.23, an offer that AC claimed included $10,389 for the van's actual cash value, plus $727.23 for sales taxes, and $18 for a DMV fee, minus the $500 deductible specified in the policy. According to AC, it did not use the CCC report, but considered other factors including the Southeastern Edition of used car price guide published by the National Automobile Dealers Association (NADA). AC claimed that in August 1999, the blue book pricing guide assigned a value of $9,450 to a 1995 GMC Safari cargo van. While trying to settle Dasher's claim under her policy, neither AC nor Dasher noticed the third party appraiser's error in the description of the van. Dasher filed suit in June 2000 against AC and CCC.

The trial court granted AC's motion to compel an appraisal. Apparently, the discrepancy in the specific type of van was not discovered until the court-ordered appraisal took place. Following the appraisal process, AC offered Dasher $11,900, an amount that exceeded her own appraiser's valuation of $11,784, and another appraisal of $11,725.

In dismissing the Dasher and McGowan cases, the trial court noted that the "cases all arise from disputes between the Plaintiffs and the Defendant insurers and CCC regarding the proper valuation of the Plaintiffs' automobiles that were determined to be total losses." The trial court observed that after the completion of the court-ordered appraisals, it had found that the Plaintiffs' claims "had been resolved and rendered moot by the court-ordered appraisals" under the authority of *Eberhardt v. Ga. Farm &c. Ins. Co.*[3] and *Southern Gen. Ins. Co. v. Kent.*[4] Even so, the court "permitted the Plaintiffs to amend their complaints to allege claims, if any, that were independent of the valuation disputes and that might survive the holdings of the *Eberhardt* and *Kent* decisions." After the complaints were amended, the trial court determined that:

---

[3] 223 Ga. App. 478 (477 SE2d 907) (1996).
[4] 187 Ga. App. 496 (370 SE2d 663) (1988).

the Plaintiffs having made no challenge to the appraisals and having alleged no claims independent of the valuation disputes between the Plaintiffs and Defendants, all claims (including claims of fraud, conspiracy and violations of the Georgia RICO statute) alleged in the Amended and Restated Complaints are moot and must be dismissed under the authority of *Eberhardt* and *Kent.*

The trial court also specifically found "that its ruling — that the unchallenged conclusion of the appraisal process bars the Plaintiffs' valuation-based claims — does not render the appraisal process a form of arbitration barred in disputes between insureds and insurers."

1. On appeal, McGowan and Dasher contend that the trial court erred in construing the court-ordered appraisals as determinative of liability because this construction converted the underlying appraisal provision into an arbitration clause prohibited under OCGA § 9-9-2 (c) (3). They also argue that, by directing court-ordered appraisals, the trial court forced them to participate in arbitration. They claim that because it is impermissible to include arbitration provisions in insurance contracts of this nature, the appraisal provisions are nothing more than thinly disguised arbitration provisions. We disagree.

For nearly a hundred years, so-called "appraisement" provisions have formed part of insurance policies and have been duly enforced by courts.[5] Appraisal provisions have long appeared in automobile insurance policies in this state.[6] In *Corbett*, a decision by this court in 1926, we held that

[a]n appraisement such as was contemplated by the terms of the policy in question would not determine liability. Not being an award, either common-law or statutory, it could amount to nothing more than a contractual method of ascertaining the loss, settling no other fact, and could not alone be the basis of a cause of action or judgment.[7]

In other words, an appraisal is not an award of any kind but merely

---

[5] See *Eberhardt v. Fed. Ins. Co.*, 14 Ga. App. 340, 341 (80 SE 856) (1913); *United States Fidelity &c. Co. v. Corbett*, 35 Ga. App. 606 (134 SE 336) (1926); *Pacific Nat. Fire Ins. Co. v. Beavers*, 87 Ga. App. 294, 298 (4) (73 SE2d 765) (1952); *Jordan v. Gen. Ins. Co.*, 92 Ga. App. 77 (2) (88 SE2d 198) (1955).

[6] See Jenkins & Miller, Georgia Automobile Insurance Law (2001 ed.), p. 820, Appendix B, Personal Auto Policy, p. 10 of 12.

[7] *Corbett*, supra at 613 (4).

"a contractual method of ascertaining [and settling a] loss." Appraisal provisions enable the parties to settle disputes as to the value of a loss without having to file suit. Absent fraud or mistake, a decision agreed to by any two appraisers will be binding on the insured and his insurer.[8] The appraisal process does not determine questions of liability.[9] By contrast, arbitration provisions reach much broader liability issues, including the interpretation of substantive questions of law and even the ultimate liability for claims.[10]

In 1988, the legislature enacted a prohibition in the Georgia Arbitration Code against arbitration clauses in insurance contracts.[11] And, in 1997, the legislature added OCGA § 9-9-2 (c) (3) to clarify that the prohibition against arbitration provisions does not apply to contracts between insurance companies. It is axiomatic that "all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference [thereto]."[12] For this reason, statutes must be construed in connection with the existing law, and the statutory meaning and effect must be determined in connection not only with the common law and constitution but also with reference to other statutes and judicial decisions.[13] Nothing in OCGA § 9-9-2 (c) mentions appraisal provisions or appraisements. McGowan and Dasher have not cited and we have not found any prohibition against appraisal provisions in insurance contracts as distinct from arbitration provisions. Had the legislature intended to foreclose insureds and their insurers from availing themselves of the appraisal process, it could have done so; but it did not.[14]

2. McGowan and Dasher argue that the trial court erred in relying on *Kent* and *Eberhardt* because those cases were decided before the enactment of OCGA § 9-9-2 (c) (3) and before the holding in *Continental Ins. Co. v. Equity Residential Properties Trust*.[15] We disagree.

As did the trial court, we find these claims controlled by *Eberhardt* and *Kent*. In *Eberhardt*, the policyholders, who owned personal

---

[8] See *Jordan*, supra at 78 (2), (3).

[9] See *Yates v. Cotton States Mut. Ins. Co.*, 114 Ga. App. 360, 361 (151 SE2d 523) (1966) (submitting claim to an appraisal does not resolve question of liability).

[10] See id.; *Corbett*, supra at 613-614.

[11] See OCGA § 9-9-2.

[12] (Citation and punctuation omitted.) *Avnet, Inc. v. Wyle Labs.*, 263 Ga. 615, 619 (2) (437 SE2d 302) (1993).

[13] See id.

[14] See *Wadkins v. Smallwood*, 243 Ga. App. 134, 137 (1) (530 SE2d 498) (2000) (legislature is presumed to know the existing law at the time that it enacts a statute and the effects of the change).

[15] 255 Ga. App. 445 (565 SE2d 603) (2002).

property damaged by a tornado, sued to obtain the proceeds due under their insurance policy and Georgia Farm Bureau invoked the appraisal clause in their policy.[16] This Court upheld the enforceability of the appraisal clause and rejected the argument that OCGA § 9-9-2 (c) (3) made appraisal clauses in homeowner policies nonbinding.[17] In affirming summary judgment to the insurer, we upheld the trial court's determination that after the appraisal, the remaining issues concerning bad faith penalties and attorney fees were rendered moot.[18]

In *Kent*, the policyholders alleged that their insurer "breached its contract with them and defrauded them by failing to pay the amount of damages as determined by their appraisers."[19] But, before suit was filed, the insurer invoked the appraisal clause in the policy, and an umpire made an award of $3,099.72, which the insurer tendered, less a $100 deductible.[20] Notwithstanding the tender, the claims were permitted to proceed to a jury. This court reversed the jury verdict, holding:

> where there is no evidence of fraud, oppression, irregularity, or unfairness, *other than on the disputed issue of value*, and no other circumstances tending to raise the issue, a verdict in the amount of the award is demanded. Thus, unless there is fraud sufficient to set the appraisement award aside, the trial court should have directed a verdict of $3,099.72 on the issue of amount of loss.[21]

We noted that even if the Kents' allegations of fraud were taken as true, the allegedly fraudulent action (failing to pay the Kents the amount their contractors estimated as the cost of repairs), took place before the appraisal process was invoked.[22] This court stated that:

> [o]nce the impartial observer, selected by representatives of both parties, made a determination of the amount of loss, any argument concerning value became moot as long as there was no argument that the appraisement award was

---

[16] *Eberhardt*, supra, 223 Ga. App. at 479 (2).
[17] Id.
[18] Id.
[19] *Kent*, supra at 496.
[20] Id. at 497.
[21] (Citation and punctuation omitted; emphasis supplied.) Id. at 497 (1).
[22] See id. at 498 (1).

reached through fraud or mistake. Since the umpire's decision was unvilified, appellees' attack on appellant's pre-appraisement position on the amount of loss was moot, and the trial court should have directed a verdict on the amount of loss as being that determined by the umpire.[23]

Again, we find that appraisal clauses in insurance contracts do not violate the general prohibition in OCGA § 9-9-2 (c) (3) against arbitration provisions in insurance policies. Since the umpires' decisions here were unvilified, McGowan and Dasher's claims relating to the amount of their losses were likewise moot.

Notwithstanding the arguments to the contrary, the *Continental* case does not alter this result. In *Continental*, we observed that OCGA § 9-9-2 (c) (3) "establishes the public policy of Georgia that insureds shall not be compelled by the terms of an insurance contract written by the insurer to give up their common law right to access to the courts to resolve disputes arising under the contract."[24] But appraisal provisions, unlike arbitration provisions, settle no fact other than the amount at issue, do not determine liability, and do not impede access to the courts.[25] Nothing in *Continental*, which involved an arbitration clause, negates the controlling precedent of *Eberhardt* and *Kent*, which involved appraisal clauses.

3. McGowan and Dasher contend that, even if the appraisement was not illegal under OCGA § 9-9-2 (c) (3), the trial court erroneously interpreted the appraisal provision to allow for the adjudication of defendants' legal obligations under Georgia's Administrative Code. Specifically, they claim that their insurers failed to comply with the requirements of § 120-2-52-.06 (a) 4 of the Administrative Code and that CCC failed to correctly determine the fair market valuations of their vehicles. We do not agree.

In *State Farm &c. Ins. Co. v. Mabry*,[26] the Supreme Court of Georgia observed:

> [i]n an action by the owner of personal property, such as an automobile, to recover for loss or damage sustained by him as a result of a tortious injury thereto, the measure of damages is to be determined under general principles of law. But *in a suit on a contract, as a policy of insurance, whereby the owner is insured against actual loss or damage to an automobile by collision, the measure of the insurer's liability*

---

[23] Id.

[24] *Continental*, supra at 446.

[25] See *Corbett*, supra.

[26] 274 Ga. 498 (556 SE2d 114) (2001).

*will be determined according to the terms of the contract.*[27]

The Supreme Court added, "Georgia . . . has been consistent in interpreting the physical damage coverage of automobile insurance policies to require that the insured be made whole, basing the measure of damages on the value of the vehicle."[28]

Here, neither Progressive, AC, nor State Farm contested their liability for payment of the total loss claims — only the amounts due. Since there is no claim that the court-ordered appraisals did not result in the proper measure of compensation for the value of the insured vehicles as required under the terms of the policies, no claim remains for resolution. Thus, McGowan and Dasher's arguments overlook the obvious: that their claims are now moot under *Kent*. Having been made whole by the tender/offer of the fair market values of their vehicles, the insureds have no justiciable claims remaining for resolution.

4. McGowan and Dasher contend that the trial court erred in dismissing their claims for fraudulent inducement. As McGowan states in his brief, the fraud claims "were predicated on . . . misrepresentations and concealments regarding what the Progressive policy was to provide in the event of a total loss." But, "[a] party who was fraudulently induced by misrepresentations into entering a contract may elect one of two actions: affirm the contract and sue to recover damages for its breach or rescind the contract and sue in tort to recover the contract's consideration as well as damages for fraud."[29] If the party elects to affirm the contract, he or she remains bound by its terms.[30] Here, the appellants accepted benefits under the contract and sued for damages without seeking to rescind the contract on the basis of fraudulent inducement.[31]

Moreover, as a general rule, "before an action for a tort will lie, there must be an injury accompanying such tort."[32] "[T]o establish a cause of action for fraud, a party must show that actual damages, not simply nominal damages, flowed from the fraud alleged."[33] "[F]raud

---

[27] (Citation omitted; emphasis supplied.) Id. at 507.

[28] Id. at 508.

[29] *GCA Strategic Investment Fund v. Joseph Charles & Assoc.*, 245 Ga. App. 460, 462 (537 SE2d 677) (2000).

[30] Id.

[31] See *Authentic Architectural Millworks v. SCM Group USA*, 262 Ga. App. 826, 827 (1) (586 SE2d 726) (2003) (where allegedly defrauded party elected to affirm the contract, the party remained bound by the contract terms).

[32] (Citation and punctuation omitted.) *Meeks v. Coan*, 165 Ga. App. 731, 733 (2) (302 SE2d 418) (1983).

[33] (Citation and punctuation omitted.) *Stiefel v. Schick*, 260 Ga. 638, 639 (2) (398 SE2d 194) (1990).

without damage, or damage without fraud, gives no cause of action for deceit."[34] General damages are not recoverable where the claims under which they travel have been rendered moot or the claimant has no injury-in-fact.[35] Where, as here, the issue of damages was rendered moot, any claim for fraud cannot be sustained.[36]

Moreover, liability cannot be imposed and harm cannot be deemed to flow from actions which a party has an absolute legal right to take.[37] Here, under the policies, the insurers had an absolute right to invoke the appraisal process. Even assuming that McGowan paid $175 for his independent appraisal, his policy had expressly informed him that he would be responsible for that cost. Incurring a cost as contemplated by contract cannot serve as a basis for fraud.[38]

5. McGowan and Dasher assert that the trial court erred in enforcing the appraisal provision to limit general and punitive damages to the insured's "amount of loss" under the policy. Again, we disagree. "A claim for punitive damages has efficacy only if there is a valid claim for actual damages to which it could attach."[39] Where, as here, the parties cannot show actual damages flowing from the alleged fraud, a claim for punitive damages must necessarily fail.[40]

*Case No. A05A1090*

The record shows that Walker, the owner of a 1993 Plymouth Acclaim insured by State Farm Mutual Automobile Insurance Company, was involved in a collision on July 19, 1997, that resulted in the total destruction of her car. State Farm determined the value of Walker's car to be $6,239 and subtracting her deductible of $250, offered her $5,989. State Farm tendered a check for $5,989, which Walker endorsed. On August 4, 1997, Walker and her husband transferred the certificate of title on the vehicle to State Farm.

Nearly three years later, Walker filed suit against State Farm and CCC, asserting claims for unjust enrichment and constructive

[34] (Citation and punctuation omitted.) *Gaultney v. Windham*, 99 Ga. App. 800, 807 (3) (109 SE2d 914) (1959).

[35] See *Meeks*, supra.

[36] See *Parris v. State Farm &c. Ins. Co.*, 229 Ga. App. 522, 525 (494 SE2d 244) (1997) (theory of implied cause of action under Insurance Code rejected where plaintiff failed to prove injury as a result of insurer's violation of Insurance Code).

[37] See *Williams v. South Central Farm Credit*, 215 Ga. App. 740, 741 (2) (452 SE2d 148) (1994).

[38] See *Systems Engineering &c. v. Peachtree Corners, Inc.*, 179 Ga. App. 48, 50-51 (4) (345 SE2d 136) (1986).

[39] (Punctuation omitted.) *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 270 (2) (416 SE2d 274) (1992).

[40] See *Stiefel*, supra at 639 (2).

trust, breach of contract, fraud and misrepresentation, suppression and concealment, conspiracy and violations of OCGA § 16-14-1 et seq. (RICO). Walker alleged that CCC's valuation system generated a value which approximated wholesale, rather than retail, values for comparable vehicles. She claimed that CCC assigned "condition adjustments" that "are wholly arbitrary and are not based on any statistically objective, valid, or verifiable data, supporting, for example, a deduction of $37 for 'fair' engine or $196 for 'fair' paint." Walker further alleged that "CCC valuations are known by State Farm to be regularly and typically, materially and substantially lower than NADA, Kelley Bluebook, Blackbook, and Redbook valuations, and are known by State Farm to deny insureds an actual cash value amount sufficient for the insured to purchase a comparable replacement vehicle." According to Walker, "State Farm's regular, systematic, and uniform practice of adjusting 'total loss' claims based upon CCC valuations constitutes a knowing and intentional violation by State Farm of Georgia Administrative Code § 120-2-52-.06." Walker's complaint sought certification of the case as a class action and "an amount not to exceed, in the aggregate, $74,500.00 for each member of the class."

The trial court granted State Farm's motion to compel an appraisal and deferred ruling on a defense motion to dismiss until after the completion of the appraisal process. The appraisal valued Walker's loss at $6,722.50, an amount that exceeded State Farm's tender of $5,850 (the total left after subtracting her $250 deductible). State Farm then issued Walker a check for $1,378.03 — the difference between the amount determined by the appraisal process and the amount already paid by State Farm to Walker, plus interest on the difference.

In dismissing Walker's case, the trial court found that her claims were barred by the authority of *Eberhardt* and *Kent*. In addition, the trial court rejected Walker's claim that she was damaged by being required to pay $175 in appraisal costs in order to obtain the retail replacement value of her total loss vehicle. The trial court noted that "Plaintiff has incurred a cost under the terms of her policy . . . [that] is not an independent injury that survives the ultimate determination as to the amount of loss." The court found that because Walker "has received all that she was entitled to under the contract," she "has suffered no injury-in-fact to support her claims, and thus, there exists no basis for a judgment in her favor on any of her claims against either State Farm or CCC." The court observed, "[t]o hold otherwise would suggest that the out-of-court appraisal process must be accompanied in every instance by court action, which defeats its very purpose: providing an efficient, prompt means of resolving valuation disputes." The trial court also noted that Walker's acceptance of the

amount offered by State Farm constituted an accord and satisfaction that barred Walker's claims arising under the policy and from the same transaction. As a final matter, the trial court in *Walker* concluded:

> It is clear that Plaintiff has no claims that are "separate and distinct" from claims "directed solely at violations of the Insurance Code." *Provident Indem. Ins. Co. v. James*, 234 Ga. App. 403, 406 (506 SE2d 892) (1998). Unlike the plaintiffs in *James*, for Plaintiff to succeed on her claims, she must establish that State Farm violated the Insurance Code, and thus, proof of such a violation is dispositive. Id. Permitting Plaintiff's claims to go forward would allow Plaintiff to circumvent the clear intent of the Georgia Insurance Commissioner not to permit an insured to bring a private cause of action for a violation of an insurance regulation. See OCGA § 33-6-37 (2000).

In appealing the dismissal of her claims, Walker asserts seven errors, five of which are identical to the errors raised in Case Nos. A05A0726 and A05A1077. Since those issues have already been decided adversely to Walker, we need only reach her two remaining claims.

6. Walker contends that the trial court erred in holding that OCGA § 33-6-37 divests Georgia trial courts of jurisdiction over tort and contract claims that relate in any way to a violation of the Georgia total loss regulation.

The Georgia Unfair Claims Settlement Practices Act,[41] under which the total loss regulation was promulgated, provides that "[n]othing contained in this article shall be construed to create or imply a private cause of action for a violation of this article."[42] Walker repeatedly conceded in her brief that "all of [her claims] arise out of State Farm and CCC's systematic violation of the Georgia total loss regulation in the adjustment and settlement of total loss claims throughout Georgia." The claims asserted by Walker could succeed only if State Farm was found not to comply with the total loss regulation. The trial court did not err in finding that OCGA § 33-6-37 did not provide an independent basis for her claims.

7. Walker asserts that the trial court erred in dismissing her claims under the doctrine of accord and satisfaction because there is no evidence that there was a meeting of the minds as to the settlement

---

[41] OCGA § 33-6-30 et seq.
[42] OCGA § 33-6-37.

of State Farm's total loss obligation. Having determined that the trial court did not err in dismissing Walker's claims, we need not decide whether Walker's claims were also extinguished by her accepting and negotiating a check as payment for her property damage loss.[43]

We note that the dissent's analysis overlooks the fundamental fact that all of McGowan and Dasher's claims flow from the premise that Progressive and AC fraudulently attempted to pay McGowan and Dasher less than the fair market value for their insured vehicles as our law requires. On that assumption, McGowan and Dasher asserted substantive contract and tort claims, including fraud in the inducement, conspiracy, and violations of RICO.

Even so — and even assuming arguendo the truth of all of the allegations — it is undisputed that the parties entered into a contract that provided a contractual mechanism for resolving a dispute as to valuation. Under that mechanism, either the insured or the insurer was afforded the right to invoke the appraisal clause in order to have a neutral arbiter ascertain the appropriate value of the destroyed vehicle while deciding no other issue. At the insurers' request, the trial court directed that the appraisal process in the policies be utilized. At no point did McGowan or Dasher challenge the appraisal process in any respect or the valuations derived therefrom. Indeed, the only alleged fraud occurred before the appraisal process, and there are no allegations or inferences that the appraisals themselves were unfair or fraudulent. And as this Court held in *Kent,* "unless there is a fraud sufficient to set the appraisement award aside," it will be upheld.[44]

By means of the appraisal process, McGowan and Dasher were made "whole" as to the proper value of their losses as required by state insurance law and in accordance with their respective insurance contracts. Moreover, after McGowan and Dasher were tendered full compensation for the fair market value of their vehicles, their remaining claims collapsed as such claims derived solely from the premise that Progressive and AC were attempting to deny them proper compensation for their losses, a premise rendered moot and no longer viable after the completion of the appraisal process as found under similar facts in *Kent* and *Eberhardt.* Under these circumstances, we fail to see how *Kent* and *Eberhardt* can be distinguished.

Although the dissent suggests that our holding somehow lessens protection for policyholders, such is not true. The Insurance Code explicitly empowers the Commissioner with the authority to place an insurance company on probation for up to a year "for each and every

---

[43] See *Anderson v. Shelby Mut. Ins. Co.,* 237 Ga. 687, 689 (229 SE2d 462) (1976).

[44] *Kent,* supra at 497 (1).

act in violation of this title or of the rules and regulations or orders of the Commissioner" and to penalize an insurer by imposing fines for violating "the rules, regulations, or orders of the Commissioner."[45] In other words, insurers who engage in practices that violate state law, including deliberately or consistently undervaluing claims, can be held accountable for such practices. The plaintiffs here do not seek to invoke these Code provisions, instead seeking additional damages for themselves.

*Judgments affirmed in Case Nos. A05A0726 and A05A1077. Andrews, P. J., Johnson, P. J., and Miller, J., concur. Barnes, Ellington and Bernes, JJ., dissent. Judgment affirmed in Case No. A05A1090. Andrews, P. J., Johnson, P. J., and Miller, J., concur. Barnes, Ellington and Bernes, JJ., concur in Division 6 and concur in the judgment.*

BARNES, Judge, concurring in part and dissenting in part.

Although I concur fully in Division 6 of the majority opinion that no private cause of action arises from violations of the Georgia Unfair Claims Settlement Practices Act, OCGA § 33-6-30 et seq., and concur in the judgment only as to the disposition of Case No. A05A1090, I must respectfully dissent from the other divisions and to the judgments in Case Nos. A05A0726 and A05A1077. An insured whose insurer systematically and fraudulently undervalues insured vehicles, only paying fair market value when the insured invokes a contractual appraisal clause, states a claim for relief that should not be dismissed on the insurer's motion. If it could be so dismissed, then an insurance company could consistently undervalue all of its claims, only pay full value to those insureds who have the time and resources to persevere through an additional procedural level, and never have to account to its underpaid customers. Further, I cannot agree that *Eberhardt v. Ga. Farm &c. Ins. Co.*, 223 Ga. App. 478, 479 (2) (477 SE2d 907) (1996), and *Southern Gen. Ins. Co. v. Kent*, 187 Ga. App. 496, 497 (1) (370 SE2d 663) (1988), render moot McGowan and Dasher's claims for breach of contract, fraud, and violation of the RICO statute.

Our Supreme Court declared in *Brack v. Brownlee*, 246 Ga. 818, 819 (273 SE2d 390) (1980) that the parties to a contract "are under an implied duty of good faith in carrying out the mutual promises of their contract." *Jackson Elec. Membership Corp. v. Ga. Power Co.*, 257 Ga. 772, 774 (1) (364 SE2d 556) (1988). Thus, a duty of good faith and fair dealing is implied in all contracts in this State and insurance policies are merely a specialized form of contract. McGowan and Dasher thus

---

[45] OCGA § 33-2-24 (g) provides that where an insurer knew or reasonably should have known that it was in violation of state insurance rules and regulations, the Commissioner may increase the fine up to $5,000 for "each and every act in violation."

were entitled to expect that Progressive Preferred and Atlanta Casualty would exercise good faith in carrying out their obligations under their policies and, in this context, that means that the insurers would pay the fair retail replacement value or the actual cash value of their vehicles in accordance with their policies and not resort to some stratagem or conspiracy to undervalue their vehicles. Here McGowan and Dasher contended that they were fraudulently induced to contract with the insurers because the companies promised to pay the fair retail replacement value or the actual cash value of their vehicles while the insurers, in cooperation with CCC, had a secret scheme to undervalue their vehicles and pay them less than the policies required.

These misconduct or fraud claims remain, notwithstanding the fact that the trial court required the parties to invoke the appraisal clause in the policies to ascertain the proper value of McGowan and Dasher's vehicles. Although the dispute in these cases arose from the undervaluation of the vehicles, finally establishing the proper value of the vehicles does not mean that the other claims were extinguished just because the proper values were determined. These other claims were not dependent upon the actual value established by the appraisal; instead they were dependent upon whether schemes or conspiracies existed to systematically undervalue the insured vehicles so as to deprive the insureds of the payment for the fair retail value or the actual cash value of the insured vehicles as required by their insurance policies. The actual values of the vehicles were only part of the proof required to establish those claims.

Both *Eberhardt v. Ga. Farm &c. Ins. Co.* and *Southern Gen. Ins. Co. v. Kent* were concerned primarily with the proper valuation of the insured property. Although *Southern Gen. Ins. Co. v. Kent* included a statutory bad faith claim that was determined to be untimely and *Eberhardt v. Ga. Farm &c. Ins. Co.* considered whether the appraisal clause was enforceable, neither case contained claims such as those asserted by McGowan and Dasher in these cases, i.e., claims of fraud in the inducement, breach of the implied covenant of good faith and fair dealing, conspiracy, or RICO violations. A careful reading of those cases shows that they did not decide any claims independent of the value of the vehicles. To hold that the appraisal can resolve anything other than the value of the vehicles is to convert the appraisal process to arbitration, and that is prohibited by OCGA § 9-9-2 (c) (3). See *Continental Ins. Co. v. Equity Residential Properties Trust*, 255 Ga. App. 445 (565 SE2d 603) (2002).

Because these cases were decided below on motions to dismiss under OCGA § 9-11-12 (b) (6), we are required to take the allegations in the complaint as true. *Lathem v. Hestley*, 270 Ga. 849, 849-850 (514

SE2d 440) (1999). The complaints allege that these insurance companies and CCC engaged in a conspiracy to undervalue the vehicles systematically. Presented with this scheme, the insureds were required to promptly accept payments for less than the actual value of their vehicles, contrary to the policy's provision, or engage in a protracted appraisal process at further expense and delay to the insureds. Under these circumstances, the fact that the proper value was finally determined cannot render moot the claims based on the companies' actions in undervaluing the vehicles in the first instance.

Moreover, these are not cases in which rescission must be attempted before a party brings an action for damages, as nothing in the insurance policies precludes these actions. Therefore, McGowan and Dasher could affirm the policies and sue for damages resulting from the fraud. *Ben Farmer Realty v. Woodard*, 212 Ga. App. 74, 74-75 (441 SE2d 421) (1994) ("Such '[a] suit for damages by the defrauded party for the fraud committed is not a suit for the violation of the contract, but is one for a tort and involves affirmance of the contract, and [the defrauded party] may keep the fruits of the contract and maintain an action for the damages suffered by reason of the fraud.' "). In these cases the insured property was destroyed before the alleged fraud was discovered, and thus rescission was effectively impossible. See also *McBride v. Life Ins. Co. of Va.*, 190 FSupp.2d 1366 (M.D. Ga. 2002).

Consequently, McGowan and Dasher should be given the opportunity to have their class action allegations considered and to prove these claims in the trial court.

Accordingly, I must respectfully dissent to the divisions of the majority opinion concerning Case Nos. A05A0726 and A05A1077 and the disposition of those appeals.

I am authorized to state that Judge Ellington and Judge Bernes join in this concurrence in part and dissent in part.

DECIDED JULY 15, 2005 — ■

*Butler, Wooten, Fryhofer, Daughtery & Crawford, James E. Butler, Jr., Jason L. Crawford, James C. Fuller, Campbell, Waller & McCallum, Jonathan H. Waller, Gary O. Bruce*, for appellants.

*Troutman Sanders, Alan W. Loeffler, Herbert D. Shellhouse, Wesley B. Tailor, McKenna, Long & Aldridge, John L. Watkins, David N. Stern*, for Progressive Preferred Insurance Company.

*Rogers & Hardin, Tony G. Powers, Kimberly L. Myers*, for Atlanta Casualty Company.

*Sutherland, Asbill & Brennan, John A. Chandler, Thomas M. Byrne, Teresa W. Roseborough, Kristin B. Wilhelm, Russell S. Bonds,* for State Farm Mutual Automobile Insurance Company.